# In the United States Court of Federal Claims

No. 21-778
Filed under seal: December 8, 2022
Reissued: December 16, 2022[*]
FOR PUBLICATION

|  |  |
|---|---|
| **SEKRI, INC.,** | |
| *Plaintiff,* | |
| **v.** | |
| **UNITED STATES,** | |
| *Defendant.* | |

*Alan M. Grayson*, Orlando, FL, for the plaintiff.

*Rafique Anderson*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for the defendant, with *Nicole M. Wilmoth*, Defense Logistics Agency, of counsel.

## MEMORANDUM OPINION

***HERTLING*, Judge**

In this pre-award bid protest on remand from the Federal Circuit, the plaintiff, SEKRI, Inc. (formerly Southeastern Kentucky Rehabilitation Industries, Inc.), alleged that the United States, acting through the Defense Logistics Agency ("DLA"), must procure Advanced Tactical Assault Panels ("ATAP") from SEKRI, the mandatory source for the ATAP. Three motions are currently pending.

First, the defendant moves to dismiss the case under Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). The defendant argues that the DLA's cancellation of the pending solicitation after the issuance of the Federal Circuit's decision renders the plaintiff's original complaint moot. The defendant also argues that the claims in the plaintiff's supplemental complaint, filed after the Federal Circuit's decision, are unripe.

---

[*] Pursuant to the protective order in this case, the Court initially filed this opinion under seal on December 8, 2022, and directed the parties to review the opinion and propose redactions of confidential or proprietary information. The parties have notified the Court that they have no redactions to propose. (ECF 71.) Accordingly, the Court hereby releases in full the memorandum opinion of December 8, 2022.

Alternatively, the defendant moves to dismiss the plaintiff's claims for failure to state a claim upon which relief can be granted.

Second, the plaintiff moves to enforce the Federal Circuit's decision and requests an injunction requiring the DLA to procure the ATAP from SEKRI within 10 days.

Third, the plaintiff moves to supplement or complete the administrative record.

The claims raised in the plaintiff's original and supplemental complaints have been resolved, and no relief remains available. Although the claims are nonjusticiable, the case will not be dismissed. Instead, pursuant to RCFC 15, the plaintiff will have an opportunity to amend its complaint with the additional claims that the plaintiff raised during briefing and oral argument on the pending motions, which are currently missing from its pleadings. The plaintiff's motion to enforce the Federal Circuit's decision is denied because the plaintiff is not entitled to the requested relief. Finally, the plaintiff's motion to supplement or complete the administrative record is denied without prejudice.

I.      **BACKGROUND**[1]

    A.      **The ATAP Solicitation**

The Javits–Wagner–O'Day Act ("the JWOD Act") established the Committee for the Purchase from People Who Are Blind or Severely Disabled ("the Committee"), a government agency that administers the AbilityOne program. 41 U.S.C. § 8502; 41 C.F.R. § 51-2.2. Under the AbilityOne program, federal agencies seeking to procure certain products or services "*shall* procure the product or service from a qualified nonprofit agency for the blind or a qualified nonprofit agency for other severely disabled in accordance with regulations of the Committee and at the price the Committee establishes if the product or service is available within the period required by the entity." 41 U.S.C. § 8504(a) (emphasis added). The Committee has designated a central nonprofit agency—in this case, SourceAmerica—to facilitate procurements between federal agencies and qualifying nonprofit agencies for the blind or severely disabled.[2] *Id.* § 8503(c); (ECF 44 at 11 n.7).

---

[1] When resolving a motion to dismiss, the facts alleged in a plaintiff's complaint are assumed to be true. The background, including its summary of facts, does not constitute findings of fact but is simply a recitation of the plaintiff's allegations and of the Federal Circuit's discussion and conclusions.

[2] For a more thorough discussion of the history of the JWOD Act and its implementing regulations, *see SEKRI, Inc. v. United States*, 34 F.4th 1063, 1065-68 (Fed. Cir. 2022).

The plaintiff alleged that under the AbilityOne Program, it is a mandatory source of supply for the ATAP and TAP.  (ECF 44 at 2.)  At this stage of the proceeding, the defendant agrees that SEKRI is the mandatory source for the ATAP.[3]

In July 2019, the DLA issued a request for proposals for Rifleman Sets with Tactical Assault Panels ("TAP") through a negotiated procurement.  (AR 42-46.)[4]  In April 2020, the DLA amended the solicitation to procure the Rifleman Sets with ATAP instead of TAP.  (AR 131-32.)  In June 2020, SourceAmerica emailed the DLA on SEKRI's behalf inquiring whether the DLA would be willing to acquire the ATAP through SourceAmerica and, thus, through SEKRI.  (AR 237-38.)  A DLA contracting officer responded that the DLA was competitively procuring the ATAP under the solicitation and invited SourceAmerica to submit an offer.  (*Id.*)  Bidding on the solicitation closed on October 7, 2020.  (*See* AR 169.)  SEKRI did not submit a bid.

### B.    Initial Claims and Their Dismissal

The plaintiff filed its initial complaint on January 1, 2021.  (ECF 1.)  The plaintiff alleged that it qualified as a mandatory source of supply for the ATAP under the JWOD Act.  It alleged that the DLA had awarded a contract for TAP to Propper International, Inc. ("Propper"), and after the award, amended the solicitation to replace TAP with ATAP.  (*Id.* at ¶¶ 23, 24.)  The DLA had not required Propper to obtain the ATAP from SEKRI.  (*Id.* at ¶ 25.)

The initial complaint specified four claims for relief.  First, the plaintiff alleged that the DLA's contract with Propper violated the JWOD Act and Committee regulations governing procurement of the ATAP.  (*Id.* at ¶ 28.)  Second, the plaintiff alleged that the DLA was required under the JWOD Act to provide the Committee or SourceAmerica with information "needed to enable the Committee to determine whether the ATAP is suitable to be furnished by a non-profit agency."  (*Id.* at ¶ 31.)  Third, the plaintiff alleged that the DLA's amendment of a contract for the procurement of the TAP violated Committee regulations.  (*Id.* at ¶ 34.)  Fourth, the plaintiff alleged that the DLA's amendment of the TAP contract after award was unlawful under Federal Acquisition Regulations (the "FAR").  (*Id.* at ¶¶ 36, 37.)  For its first two claims, the plaintiff sought "injunctive relief prohibiting federal procurement of the ATAP (or any 'similar' items, *etc.*) from anyone other than SEKRI."  (*Id.* at ¶¶ 29, 32.)  In its prayer for relief, the plaintiff requested an order "[e]njoining federal acquisition of the ATAP, and any replacement item or variation of the ATAP, and any item that is 'essentially the same' or 'similar,' from any source other than SEKRI."  (*Id.* at ¶ 39.)

---

[3] (Tr., ECF 67 at 26:15-16 (counsel for the defendant conceding that if the DLA wishes to procure the ATAP, it must procure the ATAP from SEKRI).)

[4] Citations to the administrative record (ECF 45, *supplemented by* ECF 57-1) are cited as "AR" with the pagination reflected in that record as filed.

The defendant filed a motion to dismiss under RCFC 12(b)(1) and 12(b)(6).  (ECF 13.) Following briefing and oral argument, the Court granted the defendant's motion, holding that the plaintiff had not demonstrated the existence of subject-matter jurisdiction.  *SEKRI, Inc. v. United States* ("*SEKRI I*"), 152 Fed. Cl. 742 (2021), *rev'd*, 34 F.4th 1063 (Fed. Cir. 2022).  The Court held that the plaintiff was not an "interested party" under 28 U.S.C. § 1491(b) because under the Federal Circuit's precedents it was not an actual or prospective bidder.  *Id.* at 748-49. Alternatively, the Court found that the plaintiff had waived its claim by failing to object to the government solicitation before the close of the bidding process under *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007).  *Id.* at 758.  The plaintiff appealed.  (*See* ECF 26.)

## C.   The Federal Circuit's Decision

On May 13, 2022, the Federal Circuit reversed both holdings of *SEKRI I*.  *SEKRI, Inc. v. United States* ("*SEKRI II*"), 34 F.4th 1063 (Fed. Cir. 2022).  The Federal Circuit held that SEKRI, as the designated mandatory source of the ATAP in the AbilityOne Program, qualified as a prospective bidder for standing purposes under the Tucker Act.  *Id.* at 1071.  The Federal Circuit "decline[d] the invitation to treat mandatory sources of commodities participating in the AbilityOne Program the same as other potential interested parties."  *Id.* at 1072.  "It is unreasonable to require mandatory sources such as SEKRI to openly compete in the competitive bidding process given Congress's intent to take participants in the AbilityOne Program out of the competitive process."  *Id.*

Furthermore, the Federal Circuit explained that the plaintiff was under no obligation to monitor the DLA's contracting activities:

> [I]t would not make sense to impose upon mandatory sources an affirmative obligation to monitor the federal government's solicitations to identify attempts to circumvent the AbilityOne Program and immediately bring agency protests, especially where the JWOD Act places an affirmative obligation on procuring agencies to determine whether the procurement is subject to a mandatory source.  Here, the onus is on the procuring agency, not the nonprofit agency participating in the AbilityOne Program.

*Id.* at 1072-73.

Additionally, the Federal Circuit held that SourceAmerica's email to the DLA prior to the close of bidding satisfied the requirements of *Blue & Gold Fleet*:

> SEKRI, through SourceAmerica—early in the bidding period and shortly after SEKRI learned of the solicitation—gave notice to DLA that it was a mandatory source of ATAP participating in the AbilityOne Program.   DLA confirmed its receipt of the SourceAmerica contact, and it responded with its determination that it would proceed with a competitive bid.

4

*Id.* at 1073.  SEKRI's inquiry to the DLA through SourceAmerica constituted a "timely, formal challenge" to the solicitation.  *Id.*

Accordingly, the Federal Circuit held that "SEKRI qualifies as a prospective bidder for standing purposes because DLA was aware during the bidding process that SEKRI is a mandatory source of ATAP in the AbilityOne Program."  *Id.* at 1074.  Also, "SEKRI did not waive its bid protest rights under *Blue & Gold Fleet* because DLA was on notice, during the bidding process, that SEKRI is the mandatory source of ATAP in the AbilityOne program."  *Id.* The Federal Circuit reversed the dismissal and remanded the case "for further proceedings consistent with this opinion."  *Id.*

Following the decision, the DLA issued several amendments to the solicitation.  On June 27, 2022, the DLA amended the solicitation to request proposals for Rifleman's Sets with TAP instead of ATAP.  (AR 299-300.)  On July 21, 2022, the DLA issued a market-research request to SourceAmerica and SEKRI seeking information about SEKRI's production lead time, SEKRI's maximum monthly production capacity, and SEKRI's estimated pricing.  (AR 258-59.) On July 22, 2022, the DLA revised the solicitation again; the current solicitation seeks to procure only Rifleman's Sets without either TAP or ATAP.  (AR 306-10.)

### D.   Supplemental Claims

On August 26, 2022, the plaintiff filed a supplemental complaint setting forth additional allegations and claims arising after the Federal Circuit's decision.  (ECF 44.)  The plaintiff again alleged that SEKRI is a mandatory source of supply for the ATAP under the JWOD Act and Committee regulations, that the DLA must purchase the ATAP or the TAP from SEKRI, and that SEKRI's price for the ATAP is fair.  (*Id.* at ¶¶ 19, 38, 44.)

Despite the DLA's decision not to purchase the TAP or the ATAP at this time, the plaintiff alleged that the June 2022 amendment to the solicitation replacing the ATAP with the TAP was illegal because under Committee regulations, SEKRI is the mandatory source for both the TAP and the ATAP.  (*Id.* at ¶ 38.)

Citing the market-research request, the plaintiff also alleged that the DLA is "contemplating making an award a year from now, on the theory that it takes that long for DLA to make an award."  (*Id.* at ¶ 47 (emphasis omitted).)  The plaintiff alleged instead that the process for ordering the ATAP "could be accomplished in roughly two hours."  (*Id.*)  The plaintiff alleged that the DLA's mistaken impression of a timeline for contract award constitutes agency action unlawfully withheld or unreasonably delayed under the Administrative Procedure Act ("APA").  (*Id.* at ¶ 47); *see* 5 U.S.C. § 706(1).

The plaintiff further alleged that the DLA and SourceAmerica engaged in discussions over the DLA's needs regarding SEKRI's production time frame and ramp-up schedule.  The supplemental complaint quotes an email from a DLA employee to a SourceAmerica representative sent on August 10, 2022:

> To confirm, SEKRI will hold the current procurement list price if DLA issues a contract now? If that is the case, it may be in everyone's best interest to issue a fixed-quantity contract for 1-year's worth of requirements (or 234,000 A-TAPs). From there we can also work on a long-term contract/updating the PL to cover our needs based on the Army's requirements we just received at the start of the month. If SEKRI is holding the current price, does SourceAmerica just require a solicitation/signed price concurrence from DLA to proceed with getting an award in place?

(ECF 44 at ¶ 50.) The plaintiff cited this email to support its allegation that the DLA has acknowledged that it "is required to accept Ability One's pricing of a JWOD . . . contract, not to haggle over it." (*Id.*) The plaintiff alleged that "[i]f DLA actually had followed through on this e-mail, SEKRI likely would have agreed to curtail further proceedings here." (*Id.*)

The supplemental complaint also alleged that on August 12, 2022, SourceAmerica informed the DLA that SEKRI was ready to proceed with a contract. The plaintiff alleged that the DLA then changed course:

> The same day, DLA advised SourceAmerica via e-mail that it was *retracting* its offer to issue a 1-year ATAP supply allotment to SEKRI, and limiting any future long-term allotment to 50% of ATAP requirements. In the same e-mail, DLA also asserted that SEKRI's price is not fair or reasonable, and DLA demanded a 45% price cut from the price that AbilityOne established as the fair market price for ATAP nearly *three years ago* (*i.e.,* before the current wave of inflation, which has increased SEKRI's costs like everyone else's).

(*Id.* at ¶ 52 (emphases in original) (footnote omitted).)

After SourceAmerica requested more information, the DLA explained that the decision to forgo the contract was due to the estimated dollar value for the quantity the DLA requires. The DLA asked for documentation concerning SEKRI's designation as the mandatory source of all the federal government's ATAP needs; the plaintiff also alleged that the DLA demanded the right to divide any ATAP contract between SEKRI and another supplier. (*Id.* at ¶ 54.)

The supplemental complaint presented four additional claims for relief. In its first claim, the plaintiff "objects to any solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract for federal procurement of the ATAP (or similar items such as the TAP, *etc.*) from anyone other than SEKRI." (*Id.* at ¶ 58.) The plaintiff "also objects to the now-numerous violations of statutes and regulations in connection with the procurement or a proposed procurement of ATAP from SEKRI, the mandated JWOD Act source." (*Id.*) The plaintiff alleged that the "DLA's continued and increasingly inexplicable and thinly-veiled prevarications in allotting the U.S. Army's ATAP or TAP requirements to SEKRI, as the JWOD Act mandatory source for these items, also constitutes 'agency action

unlawfully withheld or unreasonably delayed' in violation of APA § 706(1)." (*Id.* at ¶ 59.)  The plaintiff seeks "injunctive relief prohibiting federal procurement of the ATAP, the TAP (or 'similar' items, *etc.*) from anyone other than SEKRI; and requiring DLA to cease and desist from its violations of procurement law and DLA's unlawful withholding and unreasonable delays in allotting its ATAP (or TAP) requirements to SourceAmerica and SEKRI." (*Id.* at ¶ 60.)

In its second claim, the plaintiff alleged that:

> DLA also has been required to provide the Committee or a central nonprofit agency with the information needed to enable the Committee to determine whether the ATAP is suitable to be furnished by a non-profit agency. In substance, DLA has failed to do so in violation of APA §§ 706(1) and 706(2)(A). . . .

> SEKRI therefore seeks injunctive relief prohibiting DLA from procurement of the ATAP (or "similar" items, *etc.*) from anyone other than SEKRI; and requiring DLA to cease and desist from its violations of procurement law and its unlawful withholding and unreasonable delays in allotting its ATAP (or TAP) requirements to SourceAmerica and SEKRI.

(*Id.* at ¶¶ 62, 63.)

In its third claim, the plaintiff alleged that:

> The TAP contract, as serially (and curiously) "amended" to require the ATAP, then the TAP, and now neither the ATAP nor the TAP, appears to require the provision of ATAP or the TAP as part of [Modular Lightweight Load-carrying Equipment ("MOLLE")]. DLA has not required Propper and other offerors to order the ATAP (or TAP) from SEKRI.  If DLA still plans to procure the ATAP or TAP as part of MOLLE, whether as part of its "50%" *dictat* or otherwise, this violates 41 C.F.R. § 51-5.2 and APA §§ 706(1) and 706(2)(A).

(*Id.* at ¶ 65.)  The plaintiff did not specify the relief it sought for this claim beyond the prayer for relief.

In its fourth claim, the plaintiff alleged that the "DLA violated the FAR by purporting to amend the TAP Contract after award." (*Id.* at ¶ 67.)  Furthermore, the plaintiff alleged that if the "DLA had modified the TAP Contract, instead of amending it, that would have been an improper out-of-scope or cardinal change to the TAP Contract." (*Id.* at ¶ 68.)  The plaintiff alleged that the award of a contract for the ATAP or TAP to a contractor other than SEKRI violates procurement statutes and regulations.

In its prayer for relief, SEKRI requested an injunction prohibiting the "federal acquisition of the ATAP, and any replacement item or variation of the ATAP (such as the TAP), and any

7

item that is 'essentially the same' or 'similar' as the ATAP[ ] from any source other than SEKRI." (*Id.* at ¶ 69(a).)  The plaintiff also sought to enjoin "DLA's continued unlawful withholding of and unreasonable delay (and other violations of law) in awarding its ATAP (or TAP) requirement to SEKRI as required by the JWOD Act, its implementing regulations, and the Court of Appeals decision in *SEKRI . . . .*" (*Id.* at ¶ 69(b).)  Finally, the plaintiff sought bid preparation and proposal costs and requested attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  (*Id.* at ¶ 69(c) & (d).)

### E.    Subsequent Developments

On August 31, 2022, Judge Horn issued a written opinion in a related case, *Goodwill Industries of South Florida, Inc. v. United States*, 162 Fed. Cl. 160 (2022).[5]  The plaintiff there contended that it was a mandatory source of supply for Women's Army Improved Hot Weather Combat Uniform Trousers ("Women's IHWCU Trousers") under the JWOD Act and Committee regulations, and that the DLA's commercial solicitation of the Women's IHWCU Trousers was unlawful.  Judge Horn, in a thorough opinion, held that the DLA had "acted arbitrarily and capriciously when it violated the JWOD Act and its implementing regulations by issuing a competitive solicitation for the Women's IHWCU Trousers without a determination by AbilityOne or SourceAmerica that a qualified nonprofit was unable to meet the DLA requirement."  *Id.* at 208-09.  The solicitation for Women's IHWCU Trousers using competitive procedures was permanently enjoined.  *Id.* at 213.

In this case, the defendant filed the administrative record for the ATAP procurement on September 9, 2022.  (ECF 45.)

On that same day, the plaintiff filed its motion to enforce the Federal Circuit's decision.  (ECF 46.)  The plaintiff argued in its motion that under the Federal Circuit's decision, the DLA must procure the ATAP or the TAP from SEKRI within 10 days or else show good cause for a delay in doing so.  (*Id.* at 23-24.)

On September 19, 2022, the plaintiff filed its motion to supplement or complete the administrative record, arguing that the defendant should provide further documentation or support explaining the rationale for the decision not to procure from SEKRI either ATAP or TAP as part of the DLA's corrective action.  (ECF 52.)

On October 3, 2022, the defendant filed a notice indicating that "the Defense Logistics Agency will advise the United States Department of Justice when a final decision is made with respect to the procurement of the [ATAP]."  (ECF 55.)

On October 7, 2022, the defendant responded to both motions filed by the plaintiff and supplemented the administrative record.  (ECF 57-1 (AR supplement); ECF 58 (response brief).)

---

[5] The written opinion followed an oral ruling, which was effective immediately.  *Goodwill*, 162 Fed. Cl. at 166.  The opinion was unsealed and reissued for publication on September 18, 2022.

On October 14, 2022, the plaintiff filed a reply brief in support of its motion to enforce, (ECF 60), and a reply brief in support of its motion to complete the administrative record, (ECF 61.)

Also on October 14, 2022, the defendant filed its motion to dismiss, arguing that the DLA's cancellation of the ATAP procurement renders the plaintiff's original claims moot and that the supplemental claims are unripe. (ECF 62.) The defendant does not explain, either in its briefing or in the administrative record, why it waited until more than three months after canceling the ATAP procurement to argue that the DLA's actions had rendered the plaintiff's original claims moot.

The defendant appended to the motion to dismiss an affidavit from the responsible DLA contracting officer explaining the current state of the ATAP procurement:

> DLA still has a requirement for the ATAP or the TAP. At this time, DLA has not yet made any final decision to obtain the ATAP or TAP from any vendor. At this time, DLA has not yet made any final decision about how to procure the ATAP or the TAP in the future. DLA is mindful of the decision of the United States Court of Appeals for the Federal Circuit in this case, and DLA intends to comply with all laws and regulations when it does make a final decision in these matters. At this time, DLA has not yet made any final decision about whether to procure the ATAP from SEKRI.

(ECF 62-1 at ¶ 12.)

The contracting officer noted that the DLA is still considering procuring the ATAP from SEKRI:

> Currently, DLA along with SourceAmerica, is conducting its due diligence by determining whether SEKRI could produce the number of ATAP units to satisfy the agency's monthly requirement. . . . Also, DLA currently is conducting research to determine whether SEKRI's price per ATAP unit is equitable and satisfactory. A determination must be made as to whether SEKRI has capability to meet the agency's monthly ATAP requirement. 41 C.F.R. § 51-2.4.

(*Id.* at ¶¶ 13, 14.)

The contracting officer averred that if the parties cannot agree on a price, then the DLA will engage in the Committee impasse process contemplated by 41 C.F.R. § 51-2.7. (*Id.* at ¶ 16.) According to communications between the DLA and SourceAmerica included in the administrative record, the DLA will need the next batch of the ATAP delivered by June 2023 at the latest. (AR 265.)

The plaintiff filed a response to the motion to dismiss on October 28, 2022. (ECF 63.) The defendant filed a reply brief on November 4, 2022. (ECF 64.)

9

The Court heard oral argument on the three pending motions on November 15, 2022.

## II.     STANDARDS OF REVIEW

### A.     Motion to Dismiss

Under RCFC 12(b)(1), a "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). When a plaintiff's jurisdictional facts are challenged, only those factual allegations that the defendant does not controvert are accepted as true. *Shoshone Indian Tribe of Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). A court is not "'restricted to the face of the pleadings'" in resolving disputed jurisdictional facts and may review evidence outside the pleadings. *Id.* (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied*, 512 U.S. 1235 (1994)).

The plaintiff has the burden of establishing jurisdiction by a preponderance of the evidence. *Trusted Integration*, 659 F.3d at 1163. If the court finds that it lacks subject-matter jurisdiction over the plaintiff's claim, RCFC 12(h)(3) requires dismissal of the claim.

Under RCFC 12(b)(6), dismissal "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). A court must both accept as true a complaint's well-pleaded factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and draw all reasonable inferences in favor of the non-moving party, *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). To avoid dismissal under RCFC 12(b)(6), a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiff is entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

### B.     Motion to Enforce

A trial court "'must strictly obey the mandate of a circuit court of appeals.'" *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 951 (Fed. Cir. 1997) (quoting *Laitram Corp. v. NEC Corp.*, Civ. A. No. 89-1571, 1995 WL 758904, at *1 (E.D. La. Dec. 22, 1995)). "Unless remanded by [the court of appeals], all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999). "'Upon return of its mandate, the [trial] court cannot give relief beyond the scope of that mandate, but it may act on matters left open by the mandate.'" *Laitram*, 115 F.3d at 951 (quoting *Caldwell v. Puget Sound Elec. Apprenticeship & Training Tr.*, 824 F.2d 765, 767 (9th Cir. 1987) (internal quotation omitted)). "While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." *Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 168 (1939).

C.      **Motion to Complete the Administrative Record**

In reviewing agency conduct under the APA, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The administrative record "should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the APA." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009).

## III.   DISCUSSION

The three pending motions are addressed in the following order: (1) the defendant's motion to dismiss, (2) the plaintiff's motion to enforce the decision of the Federal Circuit, and (3) the plaintiff's motion to supplement or complete the administrative record and other issues raised by the plaintiff during briefing or oral argument.

A.      **The Defendant's Motion to Dismiss**

A federal court may entertain only "Cases" and "Controversies." U.S. Const. art. III, § 2. This constitutional limitation requires federal courts first to evaluate a claim's justiciability, *i.e.*, whether the dispute is "capable of resolution through the judicial process," and whether the claim would require the court to "intrude into areas committed to the other branches of government." *Flast v. Cohen*, 392 U.S. 83, 94-95 (1968). "The Court of Federal Claims, though an Article I court, 28 U.S.C. § 171 (2000), applies the same standing requirements enforced by other federal courts created under Article III." *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003); *see also* 28 U.S.C. § 2519 (empowering the Court of Federal Claims to enter final judgments in any "claim, suit, or demand against the United States arising out of the matters involved in the case or controversy"); *Aero Spray, Inc. v. United States*, 156 Fed. Cl. 548, 556 n.8 (2021). Among the doctrines encompassed by justiciability are ripeness and mootness. *See, e.g.*, *Flast*, 392 U.S. at 95.

The defendant seeks dismissal of the case because the plaintiff's original claims are moot, and the plaintiff's supplemental claims are unripe. The defendant argues that the nonjusticiable nature of the plaintiff's claims deprives the court of subject-matter jurisdiction and requires dismissal under RCFC 12(b)(1) and 12(h)(3). In the alternative, the defendant argues that the plaintiff has failed to state a claim upon which relief can be granted under RCFC 12(b)(6).

As a preliminary matter, in its response to the motion to dismiss, the plaintiff argues that the defendant should not have "two bites at the apple" and be permitted to file another motion to dismiss. (ECF 63 at 5.) On this motion to dismiss, however, the defendant raises issues of justiciability arising from events occurring after the Federal Circuit's decision (and, by extension, after the filing of its first motion to dismiss). "'The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)); *see also, e.g.*, *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (quoting identical language). Accordingly, the plaintiff's claims must be evaluated in the face of the defendant's arguments that the DLA's actions have rendered the plaintiff's claims nonjusticiable.

Additionally, the defendant challenges the plaintiff's supplemental claims for the first time.  The defendant therefore has not waived the arguments raised in the pending motion to dismiss.

The plaintiff's claims in both its original complaint and its supplemental complaint must be evaluated for justiciability.

### 1.   Original Complaint

In its initial complaint, the plaintiff alleged that the DLA violated the JWOD Act and Committee regulations by competitively soliciting proposals for the ATAP.[6]  The original complaint contained four claims.  First, the plaintiff objected "to any solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract for federal procurement of the ATAP (or similar items, *etc.*) from anyone other than SEKRI."  (ECF 1 at ¶ 28.)  Second, the plaintiff claimed that the DLA is required to refer the ATAP to the Committee or SourceAmerica "to determine whether the ATAP is suitable to be furnished by a non-profit agency."  (*Id.* at ¶ 31.)  Third, the plaintiff claimed that the DLA's failure to require Propper to procure the ATAP from SEKRI violated a Committee regulation.  (*Id.* at ¶ 34.)  Fourth, the plaintiff claimed that the DLA violated the FAR by amending the TAP contract after award.  (*Id.* at ¶¶ 36-38.)  In its prayer for relief, in addition to seeking attorney's fees, the plaintiff sought to enjoin the acquisition of the ATAP or TAP from any source other than SEKRI.  (*Id.* at ¶ 38.)

The defendant argues that all these claims are moot because the DLA has taken corrective action to cancel the ATAP procurement and, as a result of that corrective action, no meaningful relief is available.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Powell v. McCormack*, 395 U.S. 486, 496 (1969).  "[A] defendant claiming that its voluntary compliance moots a case bears a formidable burden."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000).  A defendant's voluntary cessation of allegedly illegal conduct renders a case moot when (1) there is no reasonable expectation that the alleged violation will reoccur, and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Chapman Law Firm Co. v. Greenleaf*

---

[6] The original complaint has been supplemented, not supplanted, by additional allegations of events occurring after the filing of the original complaint.  *Compare* RCFC 15(d) (permitting a party to supplement its pleadings with events happening after the date of the pleading to be supplemented), *with* RCFC 15(a) (providing requirements for a party to amend its pleading).  Accordingly, the plaintiff's original claims must be evaluated despite the existence of a supplemental complaint.  *See also* 71 C.J.S. *Pleading* § 470 (2022) (noting that a supplemental pleading "is considered an addition to or continuation of the earlier pleading and is proper only in aid of the case made by the original complaint" (internal footnote omitted)).

*Constr. Co., Inc.*, 490 F.3d 934, 940 (Fed. Cir. 2007) (applying this test to corrective action in a bid protest).

"When, during the course of litigation, it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should generally be dismissed." *Chapman*, 490 F.3d at 939. A federal court lacks jurisdiction to entertain moot claims. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

The Federal Circuit has deemed it "proper" for the Court of Federal Claims to inquire into the reasonableness of corrective action taken by a federal agency to resolve a bid protest. *Chapman*, 490 F.3d at 938. Nonetheless, after analyzing and evaluating an agency's actions and any remaining available relief, other judges of this court have routinely dismissed bid protests as moot when the agency has canceled the procurement at issue. *See Square One Armoring Serv., Inc. v. United States*, 123 Fed. Cl. 309, 324-26 (2015) (declining to address the merits of the plaintiff's claims after the agency had taken corrective action); *B&B Med. Servs., Inc. v. United States*, No. 13-463C, 2014 WL 3587275, at *7 (Fed. Cl. June 23, 2014) (dismissing as moot a claim with no available meaningful relief); *Coastal Env't Grp., Inc. v. United States*, 114 Fed. Cl. 124, 131 (2013) (holding that the cancellation of a procurement rendered the protest moot); *Eskridge Rsch. Corp. v. United States*, 92 Fed. Cl. 88, 93-94 (2010) (dismissing a protest as moot when the agency had agreed to re-evaluate proposals).

The plaintiff's claims from its original complaint are addressed sequentially.

### a.  Claim One

The plaintiff's first claim challenges the very existence of a solicitation for the ATAP or the TAP. The plaintiff was vindicated on appeal, as the Federal Circuit held that "SEKRI is the designated mandatory source of ATAP in the AbilityOne Program," and the "DLA thus knowingly violated its statutory and regulatory obligation under the JWOD Act and its implementing regulations to procure ATAP from SEKRI using the AbilityOne Program." *SEKRI II*, 34 F.4th at 1071. Judge Horn's decision in *Goodwill* also supports the plaintiff's position that a solicitation for items designated under the AbilityOne Program violates the JWOD Act absent a purchase exception. 162 Fed. Cl. at 208-09.

In short, the plaintiff won. The DLA cannot issue a solicitation for the ATAP or TAP competitively unless a regulatory exception applies. *E.g.*, 41 C.F.R. § 51-5.4 (providing procedures to obtain a purchase exception). If the DLA wishes to procure the ATAP or the TAP, it must follow Committee regulations and procure from SEKRI, as the mandatory source.

Following the Federal Circuit's ruling, the DLA acceded to the plaintiff's position by canceling the competitive procurement for the ATAP; the DLA also canceled the contract amendment to Propper to procure either the ATAP or the TAP. (*See* Tr., ECF 67 at 26:15-16 (acknowledgement by defendant's counsel that if the DLA is going to buy the ATAP, it must buy it from SEKRI).) There is no pending solicitation for the ATAP or the TAP, and the DLA has no evident plans to issue one in violation of the JWOD Act and Committee regulations. (*See* ECF 62-1 at ¶ 12 (asserting that "DLA intends to comply with all laws and regulations" when it

decides whether and how it will procure the ATAP).)  Absent specific allegations of bad faith, the agency's good faith must be presumed.  *See Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002) (noting that an agency's good faith is examined only when "a government official allegedly engaged in fraud or in some other quasi-criminal wrongdoing"). The plaintiff has not alleged either in its original complaint or its supplemental complaint that the DLA has acted in bad faith.[7]

Accordingly, there is no reasonable expectation that the alleged violation—*i.e.*, the DLA's issuance of a solicitation for the ATAP or TAP—will reoccur.  *See Cnty. of Los Angeles*, 440 U.S. at 631.  Furthermore, the DLA's actions have completely and irrevocably eradicated the effects of the violation because the offending solicitation was canceled.  *See id.*

There is currently no solicitation or award to enjoin.  An injunction prohibiting the DLA from procuring the ATAP from any other contractor would be redundant; the Federal Circuit has already explained that SEKRI is the mandatory source for the ATAP.  *SEKRI II*, 34 F.4th at 1071.  The plaintiff has received the relief it requested—the cancellation of the solicitation. (ECF 1 at ¶ 38); *see also Goodwill*, 162 Fed. Cl. at 213 (canceling the solicitation using competitive procedures to procure an item subject to the JWOD Act when the DLA did not voluntarily undertake corrective action).  The legal and factual questions posed by the plaintiff's claim have been resolved in the plaintiff's favor.  *See Chapman*, 490 F.3d at 939.  The plaintiff's first claim in its original complaint is therefore moot and must be dismissed under RCFC 12(b)(1) and 12(h)(3).

>       b.       **Claim Two**

In its second claim, the plaintiff alleged that the DLA was required to furnish information to SourceAmerica to allow the Committee to determine whether the DLA was required to procure the ATAP exclusively from SEKRI.  Again, the Federal Circuit adopted the plaintiff's position, holding that the onus was on the DLA to determine whether its procurement was subject to the JWOD Act.  *SEKRI II*, 34 F.4th at 1073.  The Federal Circuit also emphasized that SEKRI was the mandatory source for the ATAP.  *Id.*  The defendant has forfeited its argument to the contrary.  *Id.* at 1071 n.9.

The plaintiff's supplemental allegations reflect that SourceAmerica, the DLA, and SEKRI have exchanged information regarding the potential procurement of the ATAP pursuant to the Committee regulations following the Federal Circuit's decision.  For example, the plaintiff

---

[7] During oral argument on these motions, the plaintiff accused the DLA of acting in bad faith with respect to the length of time it is taking to procure the ATAP.  (*See* ECF 67 at 17:8-10 (Plaintiff's Counsel: "This is an agency that is now bent on ignoring the law and bent on ignoring the authority of the Court.").)  The plaintiff has not, however, alleged bad faith by the DLA in either its original complaint or supplemental complaint.  The plaintiff also has neither alleged nor asserted that it currently expects the DLA to violate the JWOD Act by seeking to procure the ATAP competitively.

alleged in its supplemental complaint that the DLA has acknowledged that it must accept AbilityOne's pricing of a contract. (ECF 44 at ¶ 50.) The plaintiff also alleged there that the DLA has communicated to SourceAmerica that it was contemplating awarding SEKRI a contract for the ATAP in August. (*Id.*) The administrative record contains conversations between the DLA and SourceAmerica regarding the contours of a potential contract for the ATAP. (AR 262-96.)

Again, the DLA adopted the plaintiff's position and furnished information to SourceAmerica. Absent a regulatory or statutory exception, if the DLA wishes to procure the ATAP, it must do so from SEKRI. Therefore, the alleged violation cannot reoccur as SEKRI already has received its requested relief, identification as the mandatory ATAP source. *See Cnty. of Los Angeles*, 440 U.S. at 631. The Federal Circuit's decision and the DLA's subsequent discussions with SourceAmerica have eradicated the effects of the alleged violation. *See id.* No meaningful relief remains available on this claim. *See Chapman*, 490 F.3d at 939. Accordingly, the plaintiff's second claim is dismissed as moot under RCFC 12(b)(1) and 12(h)(3).

### c.    Claim Three

The plaintiff alleged that the "TAP contract, as 'amended' appears to require the provision of ATAP as part of MOLLE. [The] DLA has not required Propper to order the ATAP from SEKRI. This violates 41 C.F.R. § 51-5.2." (ECF 1 at ¶ 34.) That regulation provides: "Contracting activities shall require other persons providing commodities which are on the Procurement List [of items to be acquired from a mandatory source] to entities of the Government by contract to order these commodities from the sources authorized by the Committee." 41 C.F.R. § 51-5.2(c).

In *SEKRI II*, the Federal Circuit applied § 51-5.2(c) to the plaintiff's allegations to conclude that the DLA "knowingly violated its statutory and regulatory obligation under the JWOD Act and its implementing regulations to procure ATAP from SEKRI using the AbilityOne Program." 34 F.4th at 1071.

At oral argument on November 15, 2022, the defendant explained that although the DLA is proceeding with the MOLLE procurement, the ATAP and the TAP are no longer a part of that procurement.[8] The defendant avers that it intends to comply with the JWOD Act and Committee regulations in its future procurements of the ATAP or the TAP. (ECF 62-1 at ¶ 12.)

The defendant represents that the DLA intends to comply with all applicable laws and regulations in the future for any procurement of the ATAP. There is no reasonable expectation

---

[8] The Court posed the question: "[T]hat solicitation for the modular lightweight load-carrying equipment, does that or does that not contain TAP or ATAP as a component of that?" (ECF 67 at 45:10-12.) Counsel for the defendant answered: "It does not. They canceled that piece on June 27th." (*Id.* at 45:13-14.) The pending solicitation for MOLLE includes neither the ATAP nor the TAP. (AR 306-10.)

that a violation of 41 C.F.R. § 51-5.2 will reoccur. *See Cnty. of Los Angeles*, 440 U.S. at 631. The DLA has no plans to procure the ATAP or TAP as a component of a larger competitive procurement. The agency's good faith in the future must be presumed, absent any allegations in the complaint or supplemental complaint to the contrary. *See Am-Pro*, 281 F.3d at 1239. Furthermore, the effects of the violation have been eradicated: the DLA has canceled the competitive procurement of the ATAP or TAP that was in violation of the JWOD Act. *See Cnty. of Los Angeles*, 440 U.S. at 631. Again, the plaintiff has received its requested relief, and this claim has been resolved. *See Chapman*, 490 F.3d at 939. This claim is therefore moot and must be dismissed under RCFC 12(b)(1) and 12(h)(3).

### d.  Claim Four

In its fourth claim, the plaintiff alleged that the "DLA violated the FAR by purporting to amend the TAP contract after award." (ECF 1 at ¶ 36.) The plaintiff also alleged that if the "DLA had modified the TAP Contract, instead of amending it, that would have been an improper out-of-scope or cardinal change to the TAP Contract." (*Id.* at ¶ 37.) The plaintiff alleged that "[p]roduction of the ATAP under the TAP Contract violates procurement statutes and regulations . . . ." (*Id.* at ¶ 38.)

At oral argument, the plaintiff explained that when its original complaint was filed, the plaintiff lacked access to complete information about the solicitation.[9] The plaintiff could not discern based on publicly available information alone whether either a solicitation for the TAP or the ATAP or a contract for the TAP or the ATAP had been amended.

---

[9] Counsel for the plaintiff explained:

> When the complaint was filed, we had limited information about the original procurement—competitive procurement that was being conducted, but what was visible to us was the following. What was visible to us was that a solicitation was issued, an award was made to [Propper], which is an Alabama company, a company that does sewing in Alabama. And then something happened that appeared to be an amendment post award, and that's a very unusual and confusing situation. So when we filed the complaint, we didn't know whether they were purporting to add on the ATAP to the [Propper] awarded contract—turns out not—or whether they were going to somehow revive a solicitation that they had already made award under, which they referred to at that point as lot 2. Turned out that the latter was true, but the lot 2 solicitation for ATAP was withdrawn.

(ECF 67 at 64:2-19.)

16

The DLA modified a *solicitation* (not a contract) to replace TAP with ATAP. (*Compare* AR 42-46 (soliciting TAP in the original solicitation) *with* AR 131-32 (soliciting ATAP in amendment).) After the Federal Circuit's decision, however, the solicitation was further amended to exclude any reference to the ATAP or TAP. (AR 306-10.)

The offending amendment has been withdrawn. The defendant represents that the DLA intends to comply with all applicable laws and regulations in the future for any procurement of the ATAP. There is no reasonable expectation that the DLA will again amend the solicitation to violate the JWOD Act or Committee regulations. *See Cnty. Of Los Angeles*, 440 U.S. at 631. The effects of the unlawful amendment have been eradicated. *See id.* The plaintiff has received all relief requested for this claim. *See Chapman*, 490 F.3d at 939. Accordingly, it is moot.

In sum, all four claims raised in the original complaint are moot and must be dismissed. The plaintiff has received all the relief it requested: SEKRI has been declared the mandatory source of supply for the ATAP, the competitive procurement of the ATAP or the TAP was canceled, and the DLA has been engaging with SourceAmerica regarding a potential procurement of the ATAP from SEKRI. Additionally, the legal and factual questions underpinning the plaintiff's claims have been resolved by the Federal Circuit: if the DLA wishes to procure the ATAP or the TAP, then the DLA must purchase the ATAP from SEKRI or follow other procedures delineated in the Committee regulations. *See* 41 C.F.R. § 51-5.4 (providing the requirements for an agency to receive a purchase exception). None of the plaintiff's original claims remain to be decided, and no further relief may be granted on those claims. Accordingly, they must be dismissed under RCFC 12(b)(1) and 12(h)(3).

## 2.    Supplemental Complaint

The plaintiff filed its supplemental complaint to challenge the DLA's decision not to procure the ATAP from SEKRI immediately following the Federal Circuit's decision. (ECF 44.) The supplemental complaint states four claims: (1) that the DLA cannot solicit the ATAP or similar items from anyone other than SEKRI, and the DLA's withholding of a contract to SEKRI constitutes "agency action unlawfully withheld or unreasonably delayed" in violation of § 706(1) of the APA; (2) that the DLA has failed to furnish required information to SourceAmerica and caused unreasonable delays; (3) that if the DLA still plans to procure the ATAP or the TAP as part of MOLLE or as a set-aside for commercial procurement, that plan violates Committee regulations and the APA; and (4) that the DLA unlawfully amended a TAP contract. (*Id.* at ¶¶ 57-69.) The supplemental complaint requests an injunction prohibiting federal acquisition of either the ATAP or the TAP from any source other than SEKRI, an injunction prohibiting the DLA from unlawfully withholding and delaying an award of a contract to SEKRI for the ATAP, bid preparation and proposal costs, and attorney's fees. (*Id.* at ¶ 69.)

The defendant moves to dismiss the supplemental claims as unripe, arguing that the DLA's actions since the Federal Circuit's decision are not reviewable as final agency action, and that SEKRI therefore cannot have experienced harm from an agency decision that has not been made. (ECF 62 at 8-14.)

Although the defendant challenges all the plaintiff's claims in the supplemental complaint as unripe, issues of mootness or other jurisdictional hurdles more aptly prevent consideration of the plaintiff's claims. *See Fortson v. Toombs*, 379 U.S. 621, 631 (1965) (Goldberg, J., dissenting) ("The doctrine of 'mootness,' like the related doctrine of 'ripeness,' has been evolved by this Court so that it will not have to pass upon this type of question except upon the urging of one who is harmed or is currently threatened with harm caused by the allegedly unconstitutional action.") The plaintiff's claims are addressed sequentially.

### a.      Claim One

In the first claim of its supplemental complaint, the plaintiff alleged that:

> SEKRI is the mandatory source of supply for the ATAP, as well as "replacement commodities," "variations," and "essentially the same," or "similar" items vis-à-vis the ATAP, including the TAP. SEKRI objects to any solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract for federal procurement of the ATAP (or similar items such as the TAP, *etc.*) from anyone other than SEKRI. SEKRI also objects to the now-numerous violations of statutes and regulations in connection with the procurement or a proposed procurement of ATAP *from SEKRI,* the mandated JWOD Act source. All such DLA actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of APA §§ 706(2)(A).

(ECF 44 at ¶ 58 (emphasis in original).)

The plaintiff also alleged that the DLA's delay in making its decision regarding the ATAP procurement violates the APA:

> DLA's continued and increasingly inexplicable and thinly-veiled prevarications in allotting the U.S. Army's ATAP or TAP requirements to SEKRI, as the JWOD Act mandatory source for these items, also constitutes "agency action unlawfully withheld or unreasonably delayed" in violation of APA § 706(1). Such action (and inaction) also is in excess of DLA's statutory authority and limitations, and short of DLA's statutory right, as well as without observance of procedure required by law. APA § 706(2)(C)&(D).

(*Id.* at ¶ 59.)

The plaintiff requested an injunction prohibiting the procurement of the ATAP, the TAP, or similar items from anyone other than SEKRI and requiring the DLA to order the ATAP promptly from SEKRI. (*Id.* at ¶ 60.)

Two issues arise regarding the justiciability of the plaintiff's first claim: (1) the justiciability of past violations of procurement law in paragraph 58 of the plaintiff's supplemental complaint pre-dating the Federal Circuit's decision, and (2) the justiciability of the DLA's delay in awarding a contract for the ATAP according to paragraph 59 of the plaintiff's supplemental complaint.

### i.      Past Violations of Procurement Law

The plaintiff alleged that the DLA cannot competitively procure the ATAP or the TAP from anyone other than SEKRI unless a regulatory or statutory exception applies.  (*Id.* at ¶ 58.)

The plaintiff is correct.  The Federal Circuit so held: "As a qualified, mandatory source of ATAP participating in the AbilityOne Program, SEKRI has the right to supply the ATAP separate and apart from the competitive bidding process, in accordance with the FAR, the JWOD Act, and its regulations."  *SEKRI II*, 34 F.4th at 1074.  The Federal Circuit held that the "DLA thus knowingly violated its statutory and regulatory obligation under the JWOD Act and its implementing regulations to procure ATAP from SEKRI using the AbilityOne Program."  *Id.* at 1071.  If the DLA proceeds with an ATAP procurement, it must do so by acquiring the ATAP only from SEKRI, in accordance with the Committee regulations.

The issues raised in the first claim of SEKRI's supplemental complaint arising prior to the issuance of the Federal Circuit's decision are the same as the claims raised in SEKRI's original complaint and are, therefore, nonjusticiable as moot.  *See Cnty. of Los Angeles*, 440 U.S. at 631.  There is no reasonable expectation that the DLA will issue another competitive solicitation for the ATAP or the TAP without complying with Committee regulations.  The DLA has indicated that it will comply with all court rulings, laws, and regulations in its ATAP procurement, and the agency's good faith must be presumed.  (*See* ECF 62-1 at ¶ 12); *Am-Pro*, 281 F.3d at 1239.

Furthermore, the issues raised by paragraph 58 have already been resolved in the plaintiff's favor.  The plaintiff's position was vindicated, and the defendant's arguments were rejected.  The offending solicitation has been rescinded and reissued with no reference to the ATAP or the TAP.

The repetition by the plaintiff of its original claims does not render this claim justiciable.  Like the original claims, the plaintiff's allegations that the DLA violated the law by competitively procuring the ATAP and the TAP are moot.  The Court lacks jurisdiction to entertain those claims under RCFC 12(b)(1) and 12(h)(3).

### ii.      The DLA's Delay

In paragraph 59 of the plaintiff's first claim, the plaintiff alleged that the DLA's refusal to order the ATAP promptly from SEKRI violates § 706(1) of the APA, which provides that a court reviewing agency action shall "compel agency action unlawfully withheld or unreasonably delayed."

Section 706(1) of the APA, on which the plaintiff relies for this claim, does not, however, apply to bid protests. The Tucker Act provides that the Court of Federal Claims must review agency decisions in bid protests "pursuant to the *standards* of section 706 of title 5." 28 U.S.C. § 1491(b)(4) (emphasis added). The Federal Circuit has explained that the jurisdiction of the Court of Federal Claims does not extend to the APA in its entirety, but rather that "section 1491(b)(4) *only* incorporates the *standard of review* of section 706(2)(A)." *PGBA, LLC v. United States*, 389 F.3d 1219, 1225 (Fed. Cir. 2004) (emphases added). Even when an agency action does violate the APA, the court has discretion over whether to issue an injunction, despite the mandatory language of the APA. *Id.* at 1226-27.

The plaintiff's attempt to broaden the jurisdiction conferred by the Tucker Act to include other portions of the APA has been rejected under the authority of *PGBA*. *See Squire Sols., Inc. v. United States*, 156 Fed. Cl. 249, 260-61 (2021) (holding that the Tucker Act does not incorporate § 706 of the APA in its entirety); *FFTF Restoration Co., LLC v. United States*, 86 Fed. Cl. 226, 236 (2009) (holding that § 706(1) of the APA was "not 'relevant to bid protest cases'" (quoting *PGBA*, 389 F.3d at 127)). Accordingly, the Court lacks the authority under its Tucker Act bid-protest jurisdiction to enforce § 706(1) of the APA and award the plaintiff the relief it seeks: an order that the DLA procure the ATAP from SEKRI within 10 days.

Even if the Court had such authority, the plaintiff has not stated a claim upon which relief may be granted. *See* RCFC 12(b)(6). "[T]he only agency action that can be compelled under the APA is action legally *required*." *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 63 (2004) (emphasis in original). The Supreme Court has explained that § 706(1) empowers courts to require agencies to "perform a ministerial or non-discretionary act," but that unlike the court's bid-protest authority under the standards set forth in § 706(2) of the APA, § 706(1) ordinarily does not empower courts to compel the substance of an agency action:

> [W]hen an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be. For example, 47 U.S.C. § 251(d)(1), which required the Federal Communications Commission "to establish regulations to implement" interconnection requirements "[w]ithin 6 months" of the date of enactment of the Telecommunications Act of 1996, would have supported a judicial decree under the APA requiring the prompt issuance of regulations, but not a judicial decree setting forth the content of those regulations.

*Id.* at 64-65.

The DLA cannot be compelled to decide to purchase the ATAP more quickly under § 706(1). Ample legal authority dictates that when the DLA decides to procure the ATAP, it must do so from SEKRI as a mandatory source. *See SEKRI II*, 34 F.4th at 1073 ("SEKRI is the mandatory source of ATAP"); 41 U.S.C. 8504(a) (providing that an agency "shall procure" products on the procurement list from a qualified nonprofit agency for the blind or for other severely disabled); 41 C.F.R. § 51-1.2(a) ("The JWOD Act mandates that commodities or

services on the Procurement List required by Government entities be procured, as prescribed in this regulation, from a nonprofit agency employing persons who are blind or have other severe disabilities . . . .").

Although the DLA needs the ATAP, its decision to purchase any ATAP at all is, legally speaking, discretionary; no statutory or regulatory deadline for such a procurement exists. "Generally, agencies have broad discretion to define their own needs," and the DLA was entitled to revisit its need for the ATAP following the Federal Circuit's decision. *Broaden v. Dep't of Transp.*, No 2021-2000, 2021 WL 5353890, at *3 (Fed. Cir. Nov. 17, 2021); *see also Seventh Dimension, LLC v. United States*, 160 Fed. Cl. 1, 17-21 (explaining the general principles for canceling a solicitation), *motion for reconsideration partially granted*, 161 Fed. Cl. 110 (2022). Accordingly, a contract cannot be compelled under the APA. *SUWA*, 542 U.S. at 63-65. Even if a statutory or regulatory deadline existed, under § 706(1), the Court would have "no power to specify what the action must be." *Id.* at 65. Thus, even supposing that the court had jurisdiction to apply § 706(1) and that there was a statutory or regulatory deadline for a *decision* regarding an ATAP procurement, the Court could not prospectively dictate whether the DLA must actually procure the ATAP under § 706(1).

The plaintiff relies on *Systems Application & Technologies, Inc. v. United States* for the proposition that the DLA's corrective action is reviewable. 691 F.3d 1374 (Fed. Cir. 2012); (*see* ECF 63 at 9, 10 n.9.) Indeed, in that case, the Federal Circuit held that a challenge to an agency's decision to recompete a contract was ripe. *Id.* at 1384-85. The DLA's corrective action in this case, however, began and ended with the cancellation of any solicitations for the ATAP or TAP. The DLA's corrective action gave SEKRI all the relief it had sought in its original complaint by canceling the competitive solicitation for the ATAP. The plaintiff does not allege that the ATAP and TAP procurements were unlawfully canceled or that there are ongoing procurements in violation of the JWOD Act or Committee regulations. *Systems Application* is therefore inapposite.

The plaintiff's first claim in its supplemental complaint is nonjusticiable and must be dismissed. The allegations arising before the issuance of the Federal Circuit's decision are moot, and the Court lacks authority to compel unlawfully withheld agency action. Absent a finding of illegality or arbitrary and capricious agency actions on the merits, a court generally must not substitute its judgment for that of the agency. *See, e.g.*, *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 998-99 (Fed. Cir. 2018). This claim therefore must be dismissed pursuant to RCFC 12(b)(1) and 12(h)(3).[10]

---

[10] Notwithstanding this holding, the plaintiff's frustration with the DLA's delays is well-founded. The plaintiff is a non-profit entity training and employing the disabled. Although the onus should be on the DLA to ensure that its procurements comply with the JWOD Act and Committee regulations, the plaintiff has spent nearly two years monitoring the DLA's actions, engaging in discussions, and incurring substantial litigation costs. Despite its status as a

b.     **Claim Two**

In the second claim of its supplemental complaint, the plaintiff alleged:

> Under 41 C.F.R. § 51-5.1 DLA has been required to refer the ATAP
> to the Committee or a central nonprofit agency.  DLA also has been
> required to provide the Committee or a central nonprofit agency
> with the information needed to enable the Committee to determine
> whether the ATAP is suitable to be furnished by a non-profit agency.
> In substance, DLA has failed to do so in violation of APA §§ 706(1)
> and 706(2)(A).

mandatory source of supply for the ATAP, the plaintiff has yet to receive a contract from the DLA.  The executive director of SEKRI asserts that the DLA's delay in making a procurement decision risks serious harm to SEKRI:

> SEKRI employs 75+ workers producing the ATAP, and SEKRI has
> invested millions of dollars in equipment, facilities, and training for
> that production.  SEKRI and its workers would face irreparable
> injury if DLA continues to fail to extend that production.  SEKRI's
> workers face unemployment with few if any similar work
> opportunities, and SEKRI will lose a skilled workforce and its
> investments in production.

(ECF 46-1 at ¶ 12.)

Additionally, although not unlawful, the DLA's delay in procuring the ATAP appears facially illogical.  The record suggests that the DLA opted not to proceed immediately to procure the ATAP from SEKRI because it believes that SEKRI's price, which is approved by the Committee, is higher than the average industry price.  (AR 281-82.)  The basis for that belief is absent from the record.  While the DLA dithers, however, inflation rises.  *See, e.g.*, Gwynn Guilford, *Inflation Sits at 8.2% as Core Prices Hit Four-Decade High*, The Wall Street Journal (Oct. 13, 2022, 6:42 p.m.), www.wsj.com/articles/us-inflation-september-2022-consumer-price-index-11665628037 (last visited Nov. 21, 2022).  Wages are also rising and likely to continue doing so.  *See, e.g.*, Ben Casselman & Jeanna Smialek, *Inflation and Wages Continue to Climb Rapidly, in Bad News for the Fed*, The New York Times (Oct. 28, 2022), https://www.nytimes.com/2022/10/28/business/fedeal-reserve-inflation-wages.html (last visited Dec. 5, 2022).  The price for the ATAP, like prices for everything else, is more likely to increase than to decrease.  The DLA acknowledges that it will need to acquire the ATAP no later than June 2023.  (AR 265.)  The DLA's delay serves no apparent purpose and may ultimately harm both the plaintiff and the troops who rely on the ATAP to carry out their national-security missions.  The plaintiff's understandable frustration, however, cannot transform a nonjusticiable claim into a justiciable one.

(ECF 44 at ¶ 62.)

The plaintiff seeks an injunction "prohibiting DLA from procurement of the ATAP (or 'similar' items, *etc.*) from anyone other than SEKRI; and requiring DLA to cease and desist from its violations of procurement law and its unlawful withholding and unreasonable delays in allotting its ATAP (or TAP) requirements to SourceAmerica and SEKRI." (*Id.* at ¶ 63.)

The regulation cited by the plaintiff in support of this claim provides that government agencies:

> are *encouraged* to assist the Committee and the central nonprofit agencies in identifying suitable commodities and services to be furnished by nonprofit agencies employing persons who are blind or have other severe disabilities so that the Committee can attain its objective of increasing employment and training opportunities for individuals who are blind or have other severe disabilities.

41 C.F.R. § 51-5.1(a) (emphasis added). In the process of referring commodities to the Committee for inclusion on the procurement list, government agencies "shall provide . . . information such as the latest solicitation and amendments, bid abstracts, procurement history, estimated annual usage quantities, and anticipated date of next solicitation issuance and opening . . . ." *Id.* § 51-5.1(b).

This regulation does not require the DLA to place an order for the ATAP with SEKRI or otherwise require the DLA to engage in discussions with SEKRI directly or through SourceAmerica. Rather, this regulation guides agencies regarding the procedures for adding a commodity or service to the procurement list. The ATAP is already on the procurement list.

As Judge Tapp has observed, the procedures in § 51-5.1 "enable AbilityOne to determine whether a product or service is suitable to be furnished by" a non-profit entity employing the blind or severely disabled. *Melwood Horticultural Training Ctr., Inc. v. United Sates*, 153 Fed. Cl. 723, 729 (2021). As Judge Horn explained in *Goodwill*, § 51-5.1 serves "to promote the goals of the JWOD Act." 162 Fed. Cl. at 171-72.

The defendant does not dispute that SEKRI is the mandatory source for the ATAP under the JWOD Act.[11] The plaintiff has prevailed on that claim. *See SEKRI II*, 34 F.4th at 1069 (noting that SEKRI was "a nonprofit agency qualified as a mandatory source of the ATAP under the AbilityOne Program"). Accordingly, there is nothing left of this issue to be resolved: the ATAP is on the procurement list, and SEKRI is the mandatory source of supply for the ATAP. The regulation cited by the plaintiff, 41 C.F.R. § 51-5.1, places no affirmative obligation on the

---

[11] (ECF 67 at 26:15-16 (the defendant explaining that "[t]he Federal Circuit did not say, Your Honor, that the agency had to purchase the ATAP at all. It's saying, if you are going to buy the ATAP, then you have to go to Sekri."))

DLA in this context, as the determination that SEKRI is the mandatory source for the ATAP has already been made.

Additionally, there is no relief available on this claim.  The DLA cannot procure the ATAP or the TAP from anyone other than SEKRI without following the required procedures. *See SEKRI II*, 34 F.4th at 1071-72 (noting that the DLA had a statutory and regulatory obligation to procure the ATAP from SEKRI using the AbilityOne Program).  The regulation on which the plaintiff relies does not require the DLA to procure the ATAP more quickly.

Accordingly, this claim is moot and must be dismissed under RCFC 12(b)(1).

### c.      Claim Three

In the third claim of its supplemental complaint, the plaintiff alleged:

> The TAP contract, as serially (and curiously) "amended" to require the ATAP, then the TAP, and now neither the ATAP nor the TAP, appears to require the provision of ATAP or the TAP as part of MOLLE.  DLA has not required Propper and other offerors to order the ATAP (or TAP) from SEKRI.  If DLA still plans to procure the ATAP or TAP as part of MOLLE, whether as part of its "50%" *dictat* or otherwise, this violates 41 C.F.R. § 51-5.2 and APA §§ 706(1) and 706(2)(A).

(ECF 44 at ¶ 65.)

The plaintiff has not plausibly alleged that any TAP *contract* has been amended.  As the plaintiff explained during oral argument, the plaintiff was unable to discern based on publicly available information whether, at the time SEKRI filed its supplemental complaint, the DLA had amended a contract or a solicitation.  (ECF 67 at 64:2-19); *see supra* n.9 (quoting the transcript).  The plaintiff acknowledged at oral argument that the facts in the record fail to support this claim. (*Id.*)  The plaintiff also has not plausibly alleged that the DLA is still procuring the ATAP or the TAP as a part of its ongoing procurement of MOLLE; the DLA has canceled all procurement of the ATAP and the TAP.

In any event, this court has also already held that the DLA's commercial set-aside for an item on the procurement list violates the JWOD Act and the Committee regulations.  *Goodwill*, 162 Fed. Cl. at 200.  The plaintiff's own claim acknowledged that the DLA no longer plans to set aside 50 percent of the ATAP or TAP procurement to be acquired competitively.  The plaintiff claimed that "*if* DLA still plans to procure ATAP or TAP as part of MOLLE" as part of its 50-percent set-aside, that plan would violate the law.  (ECF 44 at ¶ 65 (emphasis added).)  The Supreme Court has explained that agency action that is "merely tentative" is not reviewable by federal courts. *Bennett v. Spear*, 520 U.S. 154, 178 (1997).  Moreover, the question of whether such a commercial set-aside would violate the law has already been resolved in the plaintiff's favor.  *Goodwill*, 162 Fed. Cl. at 208.  There is no solicitation or contract to enjoin, and so no

relief is available on this claim.  *See Chapman*, 490 F.3d at 939.  The plaintiff's claim is therefore nonjusticiable, and it must be dismissed under RCFC 12(b)(1) and 12(h)(3).

### d.   Claim Four

In the fourth claim of its supplemental complaint, the plaintiff alleged:

> DLA violated the FAR by purporting to amend the TAP Contract after award. . . .  If DLA had modified the TAP Contract, instead of amending it, that would have been an improper out-of-scope or cardinal change to the TAP Contract. . . .  Production of the ATAP (or TAP) under the TAP Contract violates procurement statutes and regulations . . . .

(ECF 44 at ¶¶ 67-69.)

This claim in the supplemental complaint is verbatim identical to the fourth claim in the plaintiff's original complaint.  (*Compare* ECF 1 ¶¶ 36-38 (alleging an unlawful amendment of a TAP contract), *with* ECF 44 ¶¶ 67-69 (also alleging an unlawful amendment of a TAP contract).)  As discussed above, the plaintiff has not plausibly stated a claim that a contract for the TAP has been amended.  *See supra* the Court's analysis of claim four of the plaintiff's original complaint at 16-17.  Like the fourth claim in the plaintiff's original complaint, the fourth claim in the supplemental complaint must be dismissed.

### e.   Prayer for Relief

In its prayer for relief, the plaintiff requests injunctive relief, bid preparation and proposal costs, and attorney's fees.  (ECF 44 at ¶ 69.)  The Court has addressed why injunctive relief is unavailable on the plaintiff's claims.  The plaintiff's additional requests for bid preparation and proposal costs and attorney's fees warrant discussion.  The availability of bid preparation and proposal costs may render an otherwise moot bid protest justiciable.  *Mitchco Int'l, Inc. v. United States*, 26 F.4th 1373, 1379-80 (Fed. Cir. 2022).

The defendant argues that the plaintiff is not entitled to bid proposal costs because the plaintiff's claims are premised on the fact that it was not required to submit a bid for the ATAP to receive a contract award.  (ECF 62 at 17-18.)

In *SEKRI I*, upon the plaintiff's concession, the Court found that the plaintiff had never submitted a bid or proposal responding to the DLA's solicitation.  152 Fed. Cl. at 748 ("SEKRI concedes that it is not an actual bidder for the DLA's solicitation.").  In *SEKRI II*, the Federal Circuit upheld that factual finding, holding that as a mandatory-source supplier in the AbilityOne Program, SEKRI did not need to submit a formal bid to have standing.  34 F.4th at 1073.  In short, the parties agree that SEKRI never submitted or prepared a formal bid or proposal.

Under the Tucker Act, monetary relief to successful bid protestors is "limited to bid preparation and proposal costs."  28 U.S.C. § 1491(b)(2).  "Bid and proposal (B&P) costs means the costs incurred in preparing, submitting, and supporting bids and proposals (whether or not

solicited) on potential Government or non-Government contracts.  The term does not include the costs of effort sponsored by a grant or cooperative agreement, or required in the performance of a contract."  48 C.F.R. § 31.205-18.

The Federal Circuit has analyzed the Tucker Act and 48 C.F.R. § 31.205-18 and concluded that a successful bid protestor cannot recover bid preparation and proposal costs when it never submitted or prepared a bid proposal.  *Innovation Dev. Enters. Of Am., Inc. v. United States* ("*IDEA*"), 600 F. App'x 743, 746 (Fed. Cir. 2000).  The bid protestor in *IDEA* argued that it was entitled to bid preparation and proposal costs when it had drafted materials to put in a proposal and emailed the materials to the agency; the protestor also stressed that the requested compensation was modest.  *Id.*  The Federal Circuit held that the plaintiff's argument "misses the point."  *Id.*  Monetary relief in bid protests is limited to costs for actual bids that a plaintiff drafted or prepared.

Other judges of this court have also required the drafting or preparation of an actual bid as a prerequisite for monetary relief in bid protests; costs incurred in anticipation of receiving a contract cannot be awarded under the Tucker Act.  *See Couture Hotel Corp. v. United States*, 138 Fed. Cl. 333, 341 (2018) ("It is well settled that bid preparation costs are the costs incurred to prepare a bid and not those incurred in anticipation of receiving the contract."); *Lion Raisins, Inc. v. United States*, 52 Fed. Cl. 629, 631 (2002) ("Costs incurred in anticipation of or to qualify for a contract award are not recoverable bid preparation expenses.").

The plaintiff argues that it "has incurred expenses in [its initial AbilityOne] qualification and annual qualification maintenance; SEKRI also incurred bid preparation and proposal expenses in connection with its existing ATAP contract; and SEKRI incurred expenses in connection with the e-mails between SourceAmerica and DLA that the Federal Circuit cites." (ECF 63 at 20.)  Since the issuance of the Federal Circuit's decision, the plaintiff has expended further efforts monitoring and communicating with the DLA.  The plaintiff notes that the Federal Circuit deemed it a "prospective bidder" for the purposes of standing.  (*Id.* at 21 n.19 (citing *SEKRI II*, 34 F.4th at 1071).)

There is no doubt that the plaintiff has expended significant effort and resources and incurred substantial costs to obtain a contract from the DLA for the ATAP, but the plaintiff has never alleged that it prepared a bid; indeed, it has conceded it has not.  Having never prepared or submitted a bid, SEKRI cannot claim entitlement to bid preparation and proposal costs.  *See IDEA*, 600 F. App'x at 746.  Rather, the costs incurred by the plaintiff are better characterized as costs incurred in anticipation of receiving or to qualify for a contract as a prospective bidder, litigation expenses, or general business expenses.  *See Couture Hotel*, 138 Fed. Cl. at 341; *Lion Raisins*, 52 Fed. Cl. at 631.  Reimbursement for such costs is not available under the FAR or the Federal Circuit's precedent.

Additionally, the availability of attorney's fees has no bearing on the justiciability of the plaintiff's claims.  The Federal Circuit has held: "Although securing attorney fees may understandably affect a party's litigation strategy, the availability of EAJA fees is not an appropriate consideration for a court when determining how to dispose of a case." *Chapman*, 490 F.3d at 939.

In sum, all requested relief is unavailable at this stage of the litigation.  The plaintiff's claims must therefore be dismissed.  *See id.*

### B.      The Plaintiff's Motion to Enforce

The plaintiff argues that the Federal Circuit's decision "requires DLA to procure the ATAP (or TAP) from SEKRI," and that the defendant is unlawfully withholding the award of a contract to SEKRI.  (ECF 46 at 24.)  The Federal Circuit held:

> DLA thus knowingly violated its statutory and regulatory obligation under the JWOD Act and its implementing regulations to procure ATAP from SEKRI using the AbilityOne Program. . . . As a qualified, mandatory source of ATAP participating in the AbilityOne Program, SEKRI has the right to supply the ATAP separate and apart from the competitive bidding process, in accordance with the FAR, the JWOD Act, and its regulations.

*SEKRI II*, 34 F.4th at 1071, 1074.

The plaintiff relies on this language to argue that the DLA's supposedly ongoing violations of procurement law must be remedied by the direct award of a contract for the ATAP to SEKRI.  The plaintiff argues that the DLA's assumption that it will take a year to award a contract to SEKRI "is a transparent attempt to try to justify a 'purchase exception' to a commercial supplier in the interim, 'the interim' here likely meaning forever."  (ECF 46 at 18.)  The plaintiff stresses that the DLA cannot set aside a portion of a contract for the ATAP to a commercial supplier or to another non-profit entity following Judge Horn's decision in *Goodwill*.  (*Id.* at 19-21.)  The plaintiff also asserts that the DLA has unlawfully demanded a price cut and required an audit of SEKRI.  (*Id.* at 20-21.)  The plaintiff asserts that the DLA's delays in procuring the ATAP "are directly contrary to *SEKRI*'s remand instructions (at this late point amounting to an open flouting of those instructions), and directly violate *SEKRI*'s explicit holdings and the clear law of this case."  (*Id.* at 22.)  The plaintiff argues that "the occasional concern expressed in the case law that the courts should not order an agency to acquire an item that it may not need is inapplicable here, because it is undisputed that the [Army, as the end-user of the ATAP,] needs the ATAP."  (*Id.* at 24.)

The plaintiff seeks an order requiring "that Defendant United States of America, acting through its Defense Logistics Agency, shall procure the [ATAP (or TAP)] from Plaintiff SEKRI, Inc. within ten (10) days after the date of the Order; or alternatively, file a statement that shows good cause for a brief extension of time in which to do so."  (ECF 46-2.)

The defendant counters that "there is no final judgment to enforce."  (ECF 58 at 9-10.)  The Federal Circuit did not require the DLA to procure ATAP from SEKRI immediately; it remanded the case "for further proceedings consistent with this opinion."  *SEKRI II*, 34 F.4th at 1074.  The defendant argues that the DLA has yet to take final action regarding the ATAP procurement.  Furthermore, the defendant contends that the plaintiff has not met the requisite

standards for an injunction, and that the Court lacks authority to issue an injunction at this stage of the procurement.

The plaintiff replies that the defendant failed to engage meaningfully with the plaintiff's arguments regarding the way that the DLA is still violating the JWOD Act and Committee regulations.  (ECF 60 at 6.)  The plaintiff quotes a portion of the Federal Circuit's decision explaining the process the DLA could use to obtain the ATAP:

> If supplies are identified on the procurement list as available from the Defense Logistics Agency ("DLA") or the General Services Administration ("GSA") supply distribution facilities, then the supplies *must* be obtained through those facilities, and in turn DLA and GSA "*shall obtain* the supplies . . . from [SourceAmerica] or its designated AbilityOne participating nonprofit agency."

34 F.4th at 1068 (emphasis and alterations to quote in original) (quoting 48 C.F.R. § 8.705-1). The plaintiff argues that this quote demonstrates that the DLA is still violating its statutory and regulatory obligation to procure the ATAP from SEKRI.  (ECF 60 at 7-8.)

The parties agree that the Court is bound by the Federal Circuit's decision and that *SEKRI II* forms the law of the case.  (ECF 46 at 17; ECF 58 at 9-10).  The parties dispute, however, the scope of the Federal Circuit's decision.

On remand, a lower court cannot re-adjudicate matters that have already been decided, but it can rule on matters left open by the appellate court's mandate.  *See, e.g.*, *Messenger v. Anderson*, 225 U.S. 436, 444 (1912); *Laitram*, 115 F.3d at 951.  "The scope of the issues presented to [the Federal Circuit] on appeal must be measured by the scope of the judgment appealed from, . . . not by the arguments advanced by the appellant."  *Engel*, 166 F.3d at 1382 (internal citations omitted) (citing *Sprague*, 307 U.S. at 168; *Laitram*, 115 F.3d at 951.).  "Only the issues actually decided—those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court—are foreclosed from further consideration."  *Id.* at 1383.

In *SEKRI I*, the complaint was dismissed for lack of standing and waiver of the right to protest.  Therefore, in *SEKRI II*, the Federal Circuit focused on the plaintiff's standing and whether the plaintiff had waived its right to protest under *Blue & Gold Fleet*.  In addressing these issues, the Federal Circuit also resolved some of the issues on the merits.  For example, the Federal Circuit held that SEKRI is the mandatory source of supply for the ATAP under the AbilityOne Program and that the defendant had forfeited its argument to the contrary.  34 F.4th at 1071 n.9.  The Federal Circuit also held that the DLA "knowingly violated its statutory and regulatory obligation under the JWOD Act and its implementing regulations to procure ATAP from SEKRI using the AbilityOne Program."  *Id.*

The Federal Circuit did not address, however, the relief due to the plaintiff upon these findings.  The Federal Circuit made clear that when the DLA wishes to procure the ATAP, it must do so from SEKRI according to Committee regulations.  *See SEKRI II*, 34 F.4th at 1071

(agreeing with the plaintiff that the DLA has an express obligation to procure ATAP from SEKRI). No part of the opinion, however, supports an inference that the DLA must procure the ATAP at all; the decision requires only that if the DLA procures the ATAP, it must do so from SEKRI. The decision of whether to procure the ATAP remains vested in the DLA. That being the case, the Federal Circuit's decision cannot be read to require the DLA to procure the ATAP from SEKRI *immediately*, before the DLA decides whether to procure the ATAP and, if so, in what quantity and under what delivery schedule. By canceling the competitive solicitation for the ATAP, the DLA complied with the Federal Circuit's decision. Under the Federal Circuit's decision and mandate, there is currently nothing to enforce.

The Federal Circuit's decision does not address the specific issues raised by the plaintiff on this motion. The Federal Circuit did not hold that the DLA had no right to pursue a purchase exception; to the contrary, it held: "To lawfully procure the ATAP from a commercial source other than SEKRI through competitive bidding, the government should have obtained a purchase exception from SourceAmerica or the Committee." *SEKRI II*, 34 F.4th at 1073. Because the DLA had not pursued a purchase exception, "the government was required to procure the ATAP from SEKRI," and SEKRI had standing to bring the bid protest. *Id.* The Federal Circuit's decision also predated Judge Horn's opinion in *Goodwill*, which invalidated the DLA's commercial set-aside of another item on the procurement list. 162 Fed. Cl. at 208. The Federal Circuit also did not address the DLA's rights or obligations to conduct an audit or negotiate a price for the ATAP with SourceAmerica.

The plaintiff takes quotes from the Federal Circuit's analysis out of context to argue that the DLA has an affirmative obligation to procure the ATAP regardless of whether the DLA still needs the ATAP and whether the DLA can afford all the ATAP it needs at the price SEKRI is offering. The plaintiff is correct that it won the appeal; SEKRI is the mandatory source for the ATAP, and if the DLA procures the ATAP, it must do so from SEKRI or else follow the procedures required by Committee regulations.

Nonetheless, accepting the plaintiff's argument that the DLA is required to procure the ATAP just because SEKRI is the mandatory source for the ATAP would lead to absurd results: All government agencies would be required by regulation to procure all items on the procurement list from all mandatory sources indefinitely, regardless of agency need or budget. A non-profit entity's status as a mandatory source under the JWOD Act does not entitle the entity to indefinite contracts with every federal agency just because the entity is a mandatory source. Rather, the JWOD Act and Committee regulations apply when a government agency has decided to procure a commodity or service subject to the procurement list. *See, e.g.*, 41 U.S.C. § 8504(a) ("An entity of the Federal Government *intending to procure* a product or service on the procurement list . . . shall procure the product or service from a qualified nonprofit agency for the blind or a qualified nonprofit agency for other severely disabled in accordance with regulations of the Committee . . . .") (Emphasis added). In the absence of such a decision, the Federal Circuit's decision provides no law to enforce in this context.

While a trial court must consider on remand "both the letter and the spirit of the mandate," *Engel*, 166 F.3d at 1383, that consideration must occur at the appropriate stage of the case. At this stage of the case, therefore, titling its motion as one to enforce the Federal Circuit's

decision does not relieve the plaintiff of its burden to demonstrate its entitlement to injunctive relief.  What a party labels its motion does not control; it is the substance of the motion that determines the decisional standards.

Because the plaintiff is seeking an injunction, the standard factors needed to support the issuance of an injunction must be addressed.  These well-rehearsed factors to be considered are:

> (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

*PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004).[12]  The plaintiff has not shown entitlement to an injunction under these four factors.

Accordingly, the plaintiff's motion to enforce the decision of the Federal Circuit is denied.

## C.    Other Issues

The claims underlying the plaintiff's motion to complete the administrative record have been dismissed.  Accordingly, the plaintiff's motion is dismissed without prejudice.

At oral argument, the plaintiff raised two novel issues.

First, the plaintiff argued that the DLA is threatening SEKRI with an unauthorized audit of SEKRI's production of the ATAP.  (ECF 67 at 17:1-3.)  The plaintiff seeks an order enjoining the audit.  (*Id.* at 17:11-16.)

---

[12] The plaintiff argues that these four factors "are the requirements for a preliminary injunction in any federal court, not the requirements for permanent relief under the Tucker Act." (ECF 60 at 4.)  Myriad cases from the Federal Circuit and this court refute that argument.  *See, e.g.*, *PGBA*, 389 F.3d at 1228-29 (listing the four factors as the guiding standards for permanent injunctive relief in bid protests); *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (noting that a court must consider the four factors when issuing permanent injunctions under the Tucker Act); *CW Gov't Travel, Inc. v. United States*, 163 F. App'x 853, 857 (Fed. Cir. 2005) (listing the factors as standards for permanent injunctions); *IAP Worldwide Servs., Inc. v. United States*, 160 Fed. Cl. 57, 69-70 (2022) ("[A]s a precondition for vacating an agency's contract award or issuing a similarly coercive order, this Court must apply the standard injunctive relief factors discussed at some length in the Court's initial decision in this case."); *Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 340-41 (2012) (noting that the Federal Circuit requires the court to consider the four factors).

Second, the plaintiff argued that the DLA violated a Committee regulation when it began the process of ordering the ATAP from SEKRI but failed to issue a final order. (*Id.* at 14:16–15:6.)  The plaintiff points to an email in the administrative record in which a DLA employee sent SourceAmerica information regarding the number of units the DLA would need to acquire, a proposed delivery schedule, and other information.  (*Id.*; AR 282.)

The applicable regulation, 41 C.F.R. § 51-6.2, provides four steps a government agency may take to procure items from a qualified non-profit entity under the AbilityOne Program.  First, the government agency must contact the central non-profit (in this case, SourceAmerica) and provide the name, stock number, latest specification, quantity, unit price, and place and time of delivery for the commodity to be procured.  *Id.* § 51-6.2(a), (b)(1).  Second, the central nonprofit agency, *i.e.*, SourceAmerica, "shall make allocations to the appropriate nonprofit agency(ies) . . . ."  *Id.* § 51-6.2(e).  Third, the "[c]entral nonprofit agencies shall reply promptly to requests for allocation."  *Id.* § 51-6.2(f).  Fourth, "[u]pon receipt of allocation, the contracting activity *shall promptly* submit an order to the appropriate central nonprofit agency or designated nonprofit agency(ies)."  *Id.* § 51-6.2(h) (emphasis added).

If the DLA submitted an allocation to SourceAmerica, the DLA may have been required to submit an order for ATAP upon SourceAmerica's response.  *See id.*

The mandatory language of § 51-6.2(h) ("shall promptly submit an order"), however, apparently clashes with § 51-6.2(g), which provides: "An allocation is not an obligation to supply a commodity or service, or an obligation for the contracting activity to issue an order."

In any case, the plaintiff's arguments raised during the proceeding are absent from its complaints.  The plaintiff raised the audit issue in the motion to enforce but does not seek to enjoin an audit under any claim in either complaint.  (*See* ECF 46 at 12.)  Although the plaintiff cites § 51-6.2 in its motion to enforce, the plaintiff relies on the regulation for the proposition that the DLA could procure the ATAP from SEKRI quickly and easily.  (*See id.*)

"[U]nder any pleading standard, a complaint must put a defendant 'on notice as to what he must defend.'"  *Artrip v. Ball Corp.*, 735 F. App'x 708, 715 (Fed. Cir. 2018) (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)).  The plaintiff's complaints as drafted did not adequately notify the defendant of the plaintiff's additional arguments raised during the briefing or oral argument at this stage of the proceeding.

Nonetheless, RCFC 15(a)(2) permits a party to amend its complaint with the court's leave.  "The court should freely give leave when justice so requires."  *Id.*  RCFC 15(d) permits a party to file a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Dismissal of previous claims does not bar the supplementation of pleadings: "The court may permit supplementation even though the original pleading is defective in stating a claim or defense."  RCFC 12(d).

When other judges of this court have dismissed bid protests as nonjusticiable, they have given leave for the protestor to amend or supplement its complaint when appropriate.  *See, e.g., Madison Servs., Inc. v. United States*, 90 Fed. Cl. 673, 683 (2009) ("To paraphrase the Supreme

31

Case 1:21-cv-00778-RAH   Document 72   Filed 12/16/22   Page 32 of 32

Court, it is *far* too late in the day, and entirely contrary to the spirit of the rules of the court and to longstanding principles, for decisions on the merits to be avoided or delayed" in requiring the plaintiff to file a new petition and pay another filing fee.) (Emphasis in original); *Coastal*, 114 Fed. Cl. at 132 (permitting the plaintiff to file a supplemental complaint to cure the defects raised on the motion to dismiss).

In this case, dismissal of the plaintiff's pending claims should not result in dismissal of the case. Rather, the plaintiff should have an opportunity to amend its supplemental complaint regarding violations of procurement law that have not already been alleged and dismissed.

An order will issue requiring the plaintiff to file an amended or supplemental complaint within 30 days. During the pendency of this action, the DLA remains under an obligation to notify its counsel when it decides whether or how to proceed with a procurement for the ATAP or TAP so that its counsel may inform the plaintiff's counsel and the Court of that decision. (*See* ECF 59.)

## IV.    CONCLUSION

The defendant's motion to dismiss is granted because no relief remains available on the plaintiff's pending claims. The DLA has rescinded the solicitations that violated the JWOD Act and Committee regulations, and if the DLA wishes to procure the ATAP or the TAP, it must do so from SEKRI according to Committee regulations. Additionally, the DLA cannot be compelled to procure the ATAP more quickly. The plaintiff's claims are therefore nonjusticiable and must be dismissed without prejudice. The plaintiff will be permitted, however, to amend or supplement its pleadings to address the issues raised in its briefing and during oral argument.

The defendant's motion to dismiss the claim for bid preparation costs is granted.

The plaintiff's motion to enforce is denied because the Federal Circuit's decision does not entitle the plaintiff to the relief it seeks.

The plaintiff's motion to supplement or complete the administrative record is denied without prejudice to its renewal after the plaintiff files its amended or supplemental complaint.

The Court will enter an order in accordance with this memorandum opinion.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**