# In the United States Court of Federal Claims

No. 21-778
Filed: January 31, 2023
NOT FOR PUBLICATION[*]

---

| |
|---|
| **SEKRI, INC.,** |
|                         *Plaintiff,* |
| **v.** |
| **UNITED STATES,** |
|                         *Defendant.* |

---

*Alan M. Grayson*, Windermere, FL, for the plaintiff.

*Rafique Anderson*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for the defendant, with *Nicole M. Wilmoth* and *Gregory M. Mathews*, Defense Logistics Agency, of counsel.

## MEMORANDUM OPINION AND ORDER

***HERTLING*, Judge**

      In this pre-award bid protest, the plaintiff, SEKRI, Inc. ("SEKRI"), seeks a temporary restraining order and a preliminary injunction prohibiting the Defense Logistics Agency ("DLA") from awarding a contract for Advanced Tactical Assault Panels ("ATAP") to UNICOR, the trade name of Federal Prison Industries, Inc. ("FPI"). The plaintiff is a mandatory source of supply for the ATAP under the AbilityOne program, which requires federal agencies to procure certain goods from qualifying nonprofit agencies employing the blind or severely disabled. The plaintiff argues that the DLA's set-aside of 50 percent of its ATAP requirement for FPI violates procurement laws and regulations. The defendant, the United States, acting through the DLA, opposes the plaintiff's motion.

---

[*] Despite the existence of a protective order in this case (ECF 9), this opinion is filed on the open record. The plaintiff has filed a motion to unseal the case and all case filings. (ECF 70.) Resolution of that motion has been stayed. (ECF 84.) Nonetheless, the parties' briefs on the plaintiff's motion for a preliminary injunction were filed on the open record, and the Court held oral argument on the open record. This opinion does not include any "source selection information, proprietary information, [or] confidential information." (ECF 9 (defining protected information).) Accordingly, this opinion is made publicly available.

Although the plaintiff has a colorable claim that a contract with FPI for production of half the ATAP is inconsistent with the law, the plaintiff has not demonstrated a likelihood of success on the merits. Additionally, the plaintiff has not demonstrated irreparable harm specific to the absence of a preliminary injunction. Accordingly, the plaintiff's motion for a preliminary injunction is denied.

## I.    BACKGROUND

This opinion assumes familiarity with the protracted history of this case. *SEKRI, Inc. v. United States*, 152 Fed. Cl. 742 (2021) ("*SEKRI I*"); *SEKRI, Inc. v. United States*, 34 F.4th 1063 (Fed. Cir. 2022) ("*SEKRI II*"); *SEKRI, Inc. v. United States*, __ Fed. Cl. __, No. 21-778, 2022 WL 17726654 (Fed. Cl. Dec. 16, 2022) ("*SEKRI III*").

In *SEKRI III*, the plaintiff's initial claims were found to be moot, but the plaintiff was allowed to file an amended complaint to address issues SEKRI raised during oral argument on the defendant's motion to dismiss the initial and first supplemental complaint. The plaintiff's pending amended complaint, styled by the plaintiff as a second supplemental complaint, but more properly treated as an amended complaint, alleges three claims for relief. (ECF 77.) First, the plaintiff alleges that the DLA's refusal to accept SEKRI's price is arbitrary and capricious and contrary to procurement law. Second, the plaintiff alleges that the DLA's issuance of a solicitation to FPI for 50 percent of its ATAP requirement violates procurement law. Third, the plaintiff alleges that the DLA is acting in bad faith. Only the plaintiff's second claim regarding the partial set-aside for FPI is relevant to its motion for a preliminary injunction.

FPI is a government corporation employing the incarcerated to produce commodities "for sale to the departments or agencies of the United States." 18 U.S.C. §§ 4121, 4122(a). FPI's organic statute provides that FPI's board of directors shall, among other things, "provide employment for the greatest number of those inmates in the United States penal and correctional institutions who are eligible to work as is reasonably possible," "so operate the prison shops that no single private industry shall be forced to bear an undue burden of competition from the products of the prison workshops," and "reduce to a minimum competition with private industry or free labor." *Id.* § 4122(b)(1).

On December 15, 2022, the DLA issued a solicitation to FPI for 50 percent of the DLA's ATAP requirement over a three-year ordering period. (ECF 79.) The defendant did not notify the plaintiff or the Court of this solicitation until January 4, 2023. (ECF 75.) On January 12, 2023, the plaintiff filed the pending amended complaint, challenging the partial set-aside to FPI. (ECF 77.) On January 20, 2023, the defendant notified the plaintiff and the Court that the DLA anticipated awarding a contract for the procurement of the ATAP to FPI on January 31, 2023. (ECF 79.) The defendant noted that the DLA was unwilling to stay the award of the contract voluntarily while this protest was pending. Under the proposed indefinite-delivery, indefinite-quantity ("IDIQ") contract, FPI would begin preparations to produce the ATAP immediately, but the initial delivery of the ATAP by FPI would not be due to the DLA until August 29, 2023, at the earliest. (ECF 85-1 at 110 ¶ 6.) The DLA would not owe FPI payment for the shipment until 30 days after the initial delivery. (*Id.* at 110 ¶ 8.)

The plaintiff filed a motion for a temporary restraining order and preliminary injunction on January 23, 2023.  (ECF 82.)  The Court held a status conference on January 24, 2023, and the defendant filed its brief in opposition to the plaintiff's motion and an appendix of relevant documents on January 30, 2023.  (ECF 85, 85-1.)  Oral argument on the plaintiff's motion was held on January 31, 2023.

## II.    STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat.l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  The purpose of a preliminary injunction in a bid protest is to preserve the *status quo* pending resolution of the case on the merits.  *See Cont'l Serv. Grp., Inc. v. United States*, 722 F. App'x 986, 994 (Fed. Cir. 2018).

The party seeking a preliminary injunction bears the burden of establishing four factors.  First, the moving party must establish that it is likely to succeed on the merits.  Second, the moving party must be likely to suffer irreparable harm absent a preliminary injunction.  Third, the balance of equities must tip in the moving party's favor.  Fourth, a preliminary injunction must be in the public interest.  *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004); *Cont'l Serv. Grp.*, 722 F. App'x at 993.

A plaintiff may not be granted preliminary relief "unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm."  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (emphasis in original); *see also Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994) ("[I]rrespective of relative or public harms, a movant must establish both a likelihood of success on the merits *and* irreparable harm . . . ." (Emphasis in original)); *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019) (upholding a decision by the Court of International Trade to deny a preliminary injunction based on a lack of irreparable harm even though the lower court declined to consider the other preliminary injunction factors).  Once each of the first two criteria is met, no single factor is dispositive, but "the absence of an adequate showing with regard to any one factor may be sufficient" to deny a motion for a preliminary injunction.  *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).

## III.    DISCUSSION

The plaintiff argues that the four factors for a preliminary injunction are met, and that the defendant should therefore be enjoined from awarding a contract to FPI.

### A.    Likelihood of Success on the Merits

The facts giving rise to this dispute and the application of law to those facts are not entirely clear.  The plaintiff has demonstrated that it has a colorable claim that the defendant has acted illegally but has not shown a likelihood of success.

The plaintiff argues that it will succeed on the merits because the award of a contract to FPI for the ATAP is unlawful.  The plaintiff argues that FPI's board of directors has not decided to produce the ATAP, and that in the absence of such a board decision, the production of the

ATAP by FPI would violate 18 U.S.C. § 4122(b)(4).  The plaintiff argues that the board of
directors has also failed to follow mandatory procedures for producing a new product, including
providing notice to affected private vendors, advising affected trade associations, and soliciting
comments.  *See* 18 U.S.C. § 4122(b)(4)-(5).  The plaintiff argues further that, although FPI
generally has priority in mandatory-source procurements over nonprofits like SEKRI, FPI's
priority is implicitly conditioned on the government's compliance with relevant statutes and
regulations.  *Cf.* 41 U.S.C. § 8504(b) (providing that FPI has priority only regarding products
"required under 4124 of title 18 to be procured from that industry").  As the only other
mandatory source for the ATAP, the plaintiff argues that it has been prejudiced by the DLA and
FPI's violation of those procedures.

The defendant argues that the statutory process described by SEKRI applies only when a
new product code and not an individual item is introduced to the FPI Schedule.  The defendant
argues that the ATAP falls under the long-standing product code 8465 "as a type of
organizational clothing and individualized equipment."  (ECF 85 at 16.)  The defendant also
explains that the first contract between SEKRI and the Army was to develop the ATAP as a
prototype.  That contract was for a service (research), not a product.  Because the contract for the
initial production of ATAP was performed under a service contract, SEKRI had priority over
FPI.  *See* FAR 8.704(a).  Once SEKRI developed and produced the prototype and follow-ons of
the ATAP, subsequent production of the ATAP would occur pursuant to a contract for goods,
under which FPI has priority over SEKRI.  *See id.*  The defendant points to documents revealing
that in September 2018 FPI waived its priority for 50 percent of the Army's ATAP requirements
for a period of five years or until 120,000 ATAP units were produced annually.  The defendant
argues that the DLA's set-aside of 50 percent of its ATAP requirement to FPI is therefore lawful.

Although other issues are relevant to the dispute, the outcome of the case hinges to a
large degree on the interpretation of the term "product," as used in 18 U.S.C. § 4122(b).  Under
that section, FPI's board of directors must take several required steps before deciding to allow
FPI to produce a new "product."

The term "product" appears undefined by the statute.  The defendant argues that
"product" means an entire category of items, so long as the items pertain to the same four-digit
code.  The defendant argues that the FPI decided on that approach in a regulation.  *Product
Development and Production:  Public Involvement Procedures*, 62 Fed. Reg. 11,465, 11,469
(FPI March 12, 1997).

The defendant's argument poses three analytical problems.  First, the plaintiff argues that
the code 8465 includes diverse items such as snowshoes, skis, and swords without scabbards.
These items are so diverse that it strains credulity that they would not be different "products"
under 18 U.S.C. § 4122(b).  Second, the definition of "product" in the Federal Register does not
necessarily support the defendant's argument.  FPI explained: "[A]n item may be considered
separate from another product in the same 4-digit FSC category, if its function differs
substantially."  62 Fed. Reg. at 11,470.  The ATAP is functionally different from skis, for
example.  Third, the defendant must show that FPI's definition of "product" aligns with FPI's
organic statute.  The plaintiff's interpretation of the term "product" as meaning an "item" is
colorable at this stage of the litigation.

4

Other facts, however, will be relevant to the dispute.  For example, the validity of AbilityOne's finding that SEKRI could meet only 50 percent of the Army's requirement in 2019 is uncertain.  Whether FPI fully or partially waived its priority, and the extent of that waiver, also requires further factual development and legal analysis that cannot be undertaken under the tight timeline required for resolution of this motion.  Although this case has been ongoing for more than two years, the facts giving rise to the plaintiff's current claims are novel.

The facts most crucial to the plaintiff's claims and the legal implications of these facts remain insufficiently developed to conclude that the plaintiff is likely to prevail on the merits of its claim.  The plaintiff's arguments regarding the legality of a contract to FPI are colorable and may prevail, but they do not yet rise to the threshold of a showing of being likely to succeed.  It is the plaintiff's burden to demonstrate likelihood of success on the merits, and, on this uncertain record, the plaintiff has not done so.

### B.   Irreparable Harm

Even assuming, for the sake of argument, that the plaintiff had demonstrated that it is likely to succeed on the merits of its claim, it must also demonstrate that it would suffer irreparable harm if its request for a preliminary injunction is denied.  The plaintiff cannot do so.

The plaintiff argues that the record and previous opinions in this case already establish irreparable injury to SEKRI.  Furthermore, the plaintiff argues that any funds that are obligated to FPI will not go to SEKRI if the contract to FPI is ultimately enjoined on the merits.  (ECF 82 at 18-19.)

The defendant argues that SEKRI will not be irreparably injured by the absence of a preliminary injunction.  The defendant argues that in the event the contract to FPI is ultimately enjoined and SEKRI is found to be the only lawful mandatory source of the ATAP, SEKRI would suffer neither loss of profits nor delay in award of the contract stemming from the initial award of the contract to FPI.[1]

In *Timberline Helicopters, Inc. v. United States*, Chief Judge Kaplan explained that irreparable harm in the preliminary-injunction context typically includes either the loss of profits while a protest is pending or the loss of an opportunity to compete fairly.  140 Fed. Cl. 117, 121 (2018).  The plaintiff in this case would suffer neither type of harm if its motion for a preliminary injunction is denied.  The DLA's process for procuring the ATAP from SEKRI will proceed regardless of the existence of a preliminary injunction on the FPI contract award, so SEKRI does not stand to lose profits because of the pending protest.  SEKRI also will not lose the opportunity to compete fairly because it is a mandatory source of supply for the ATAP outside of the competitive-procurement process.  *See SEKRI II*, 34 F.4th at 1072.

---

[1] Although largely absent from the defendant's brief, these arguments were raised in the status conference held on January 24, 2023, and at oral argument held on January 31, 2023.

In a signed statement in the appendix to the defendant's brief, the DLA contracting officer explained that the DLA would not obligate funding beyond the guaranteed minimum amount or guaranteed minimum quantity on the FPI contract. (ECF 85-1 at 110 ¶ 4); *see* FAR 16.501-2(b)(3). The minimum quantity on the contract contemplated by the DLA is 9,750 ATAP units. (ECF 85-1 at 110 ¶ 5.) Assuming a delivery order is placed on January 31, 2023, FPI's delivery of the 9,750 ATAP units will not be due until August 29, 2023. (*Id.* at 110 ¶¶ 5-6.) The DLA contracting officer avers that FPI's contract will contain FAR 52.249-2 and that the DLA will thus "retain the right to terminate FPI's contract for convenience should the Court find that DLA's award to FPI was improper." (*Id.* at 111 ¶ 9.) The "DLA will then de-obligate funds under the terminated FPI contract and re-obligate the funds for a new contract to SEKRI or another contractor, as appropriate." (*Id.*) In support of this assertion, the DLA employee quotes a Department of Defense regulation that provides:

> [W]here contract award is determined to be invalid as a result of a bid protest and the contract is terminated for convenience, appropriations charged for the original contract may be obligated for a replacement contract if it is awarded without undue delay after termination of the original contract. Any award within 100 days of termination necessarily is award without undue delay because 31 U.S.C. 1558 statutorily extends the availability of appropriations for such period following the final ruling on a bid protest.

(*Id.* at 111 ¶ 10 (quoting Department of Defense Financial Management Regulations Volume 3, Chapter 8, paragraph 081303, provision 13.3.4).)

The defendant's showing regarding the process for de-obligating and re-obligating funds undercuts the plaintiff's claim of irreparable harm. If the FPI contract is enjoined on the merits, the funds available to SEKRI to produce 100 percent of the ATAP would not be diminished. SEKRI can therefore show no injury due to the absence of a preliminary injunction. Accordingly, the plaintiff does not stand to suffer a loss in profits specific to the absence of a preliminary injunction.

A preliminary injunction also would not affect the timing of a potential contract award to SEKRI for the ATAP. The preliminary injunction of the FPI contract award would not mandate the award of a comparable contract to SEKRI; it would only halt the award to FPI. *See Citizant, Inc. v. United States*, 142 Fed. Cl. 260, 274 (2019) ("As an initial matter, the court cannot direct the government to award a contract to a specific offeror.") The defendant has indicated that the procurement process currently ongoing between SEKRI and the DLA will proceed on its own track according to its own timing independent of the procurement process between the DLA and FPI. That procurement has stalled, however, due to the parties' disagreement over the approved unit price of the ATAP, giving rise to a claim included in the plaintiff's current complaint but not at issue in the plaintiff's motion for preliminary relief.

A preliminary injunction barring award of the contract to FPI at this stage of the litigation would therefore put SEKRI in no better or worse position if the contract award to FPI is ultimately permanently enjoined on the merits.

SEKRI compellingly argues that it will suffer irreparable harm if the FPI contract is not *permanently* enjoined. The defendant does not contest the plaintiff's assertion that if the DLA acts unlawfully to deprive it of the contract to produce the ATAP, SEKRI stands to lose substantial investments to support that production, including the loss of more than 75 severely disabled employees who would have few, if any, similar work opportunities. *See SEKRI III*, 2022 WL 17726654, at *16 n.10 (quoting ECF 46-1 at ¶ 12).

SEKRI may face those harms, however, irrespective of whether a preliminary injunction issues. Enjoining an award to FPI would not mandate award of a contract to SEKRI. It is unlikely that enjoining the FPI award would cause the DLA to award 100 percent of its requirement to SEKRI immediately because the parties cannot currently agree to a price.

To demonstrate irreparable harm for the purposes of a preliminary injunction, a plaintiff must show harm particular to the absence of a *preliminary* injunction. *See Cont'l Serv. Grp.*, 722 F. App'x at 993. As Judge Wheeler once explained, a preliminary "injunction is not intended to prevent all harm that could befall a plaintiff during a pending litigation, but only that harm that could stem from failing to preserve the status quo while the case is pending." *Navient Sols., LLC v. United States*, 141 Fed. Cl. 181, 184 (2018). The plaintiff's arguments about irreparable harm absent a permanent injunction thus do not apply at this stage of the litigation.

Because SEKRI is unable to demonstrate that it would suffer irreparable harm in the absence of a preliminary injunction, its motion for such an injunction cannot be granted. *Amazon.com*, 239 F.3d at 1350; *Reebok*, 32 F.3d at 1556; *Sumecht*, 923 F.3d at 1348.

## IV. CONCLUSION

Although the plaintiff's legal argument is colorable, the plaintiff has not met its burden to demonstrate that it is likely to succeed on the merits. Moreover, even if the plaintiff had met its burden on that point, the plaintiff cannot demonstrate irreparable harm in the absence of a preliminary injunction. Because the first two factors for a preliminary injunction are not clearly met, other factors need not be addressed. *See Amazon.com*, 239 F.3d at 1350. Accordingly, the plaintiff's motion for a preliminary injunction is **DENIED**.

The Court **ADOPTS** the following schedule for further proceedings:

**February 10, 2023:**     The defendant shall file the administrative record;

**February 24, 2023:**     The parties shall file cross-motions for judgment on the administrative record and the defendant shall file any motion to dismiss;

**March 7, 2023:**     The parties shall file cross-response briefs.

The Court will consult with the parties regarding a date for oral argument at a later time.

It is so **ORDERED**.

s/ Richard A. Hertling

**Richard A. Hertling**
**Judge**