# In the United States Court of Federal Claims

No. 21-778
Filed: March 13, 2023
FOR PUBLICATION

|  |
|---|
| **SEKRI, INC.,** |
| *Plaintiff,* |
| **v.** |
| **UNITED STATES,** |
| *Defendant.* |

*Alan M. Grayson*, Windermere, FL, for the plaintiff.

*Rafique O. Anderson,* Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for the defendant, with *Steven J. Gillingham*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, and *Nicole M. Wilmoth* and *Gregory M. Mathews*, Defense Logistics Agency, of counsel.

## MEMORANDUM OPINION

**HERTLING**, Judge

In this pre-award bid protest with an extended procedural history, the plaintiff, SEKRI, Inc., alleged that the United States, acting through the Defense Logistics Agency ("DLA") and the U.S. AbilityOne Commission ("AbilityOne"), has violated statutes and regulations designating SEKRI as the mandatory source of supply for Advanced Tactical Assault Panels ("ATAP"). The plaintiff argues that AbilityOne has unlawfully limited SEKRI's status as a mandatory source, that the DLA cannot procure the ATAP from any source other than SEKRI, and that the DLA must procure ATAP at the price set by AbilityOne pursuant to regulation. The parties have filed cross-motions for judgment on the administrative record based on these arguments, and the defendant has also filed a motion to dismiss.

Regarding the pricing dispute between the parties, the plaintiff's claim is unripe and fails to state a claim upon which relief can be granted. The plaintiff's pricing claim must therefore be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). The defendant's motion to dismiss regarding the plaintiff's pricing claim is granted, and the portion of the plaintiff's motion for judgment on the administrative record for the plaintiff's pricing claim is denied.

The DLA cannot, however, legally procure ATAP from any supplier other than SEKRI for any portion of its current ATAP requirement. AbilityOne must designate SEKRI as the

mandatory source of supply for 100 percent of the DLA's ATAP requirement.  The plaintiff's motion for judgment on the administrative record is granted regarding these claims, and the defendant's motion to dismiss and its motion for judgment on the administrative record on these issues are denied.  AbilityOne is enjoined to change SEKRI's status to be the mandatory source for 100 percent of ATAP, and the unlawful solicitation the DLA issued to SEKRI is enjoined.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This case has a protracted history, and previous opinions set forth much of the relevant background.  *See SEKRI, Inc. v. United States*, 152 Fed. Cl. 742 (2021) ("*SEKRI I*"); *SEKRI, Inc. v. United States*, 34 F.4th 1063 (Fed. Cir. 2022) ("*SEKRI II*"); *SEKRI, Inc. v. United States*, 163 Fed. Cl. 562 (2022) ("*SEKRI III*"); *SEKRI, Inc. v. United States*, No. 21-778, 2023 WL 1428644 (Fed. Cl. Jan. 31, 2023) ("*SEKRI IV*").

### A.   The Plaintiff as a Mandatory Source

The Javits-Wagner-O'Day Act ("JWOD Act") requires entities of the federal government to procure certain products and services from qualified nonprofit agencies employing the blind or severely disabled.  41 U.S.C. § 8504; *see also SEKRI II*, 34 F.4th at 1065-68 (explaining various provisions of the JWOD Act and related regulations).  The JWOD Act also established the Committee for the Purchase from People Who Are Blind or Severely Disabled, which administers the AbilityOne Program and is currently known as AbilityOne.  41 U.S.C. § 8502.  AbilityOne establishes regulations regarding products and services on the procurement list, *i.e.*, those products and services that agencies of the federal government are required to procure from qualified nonprofit agencies employing the blind or severely disabled.  AbilityOne also designates central nonprofit agencies to facilitate procurements between federal and qualified nonprofit agencies.  *Id.* §§ 8503(c), 8503(d).

AbilityOne has designated SourceAmerica as the central nonprofit agency for qualified nonprofit agencies employing the severely disabled.[1]  SEKRI is a Kentucky nonprofit agency that employs the severely disabled.  AbilityOne has designated SEKRI as the mandatory source of supply for ATAP, which "is a fighting load carrier to be worn with a parachute harness" that "enables the paratrooper's fighting load to be in a ready to fight configuration when reaching the drop zone."  (AR 526.)[2]

### B.   Initial Claims

On January 21, 2021, the plaintiff filed its first complaint, alleging that the DLA's proposed award of a contract for ATAP to a commercial supplier violated the JWOD Act and

---

[1] AbilityOne has designated National Industries for the Blind ("NIB") as the central nonprofit agency for qualified nonprofit agencies employing the blind.

[2] Citations to the administrative record (ECF 45, *supplemented by* ECF 57-1, ECF 87, and ECF 97) are cited as "AR" with the pagination reflected in that record as filed.

related regulations.  (ECF 1.)  In March 2021, the complaint was dismissed for lack of standing and for waiver under *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007). *SEKRI I*, 152 Fed. Cl. 742.

In May 2022, the Federal Circuit reversed the dismissal and held that SEKRI had standing to sue and had not waived its claims under *Blue & Gold Fleet*.  The Federal Circuit also held that SEKRI was the mandatory source of supply for ATAP, and the defendant had forfeited any argument to the contrary.  *SEKRI II*, 34 F.4th at 1071 n.9.  The Federal Circuit held that the DLA "knowingly violated its statutory and regulatory obligation under the JWOD Act and its implementing regulations to procure ATAP from SEKRI using the AbilityOne Program."  *Id.*

### C.    On Remand

Following remand, the DLA issued several amendments to the solicitation at issue.  The DLA initially requested competitive proposals to procure Tactical Assault Panels ("TAP"), the ATAP's predecessor, instead of ATAP.  (AR 304-05.)  On July 22, 2022, the DLA canceled the ATAP/TAP procurement and rescinded all solicitations pertaining to either ATAP or TAP.  (AR 306-07.)

The DLA made no immediate decision, however, regarding whether it would procure ATAP from SEKRI.  On August 26, 2022, the plaintiff therefore filed a supplemental complaint seeking injunctive relief.  This supplemental complaint sought to require the DLA to procure ATAP from SEKRI immediately.  (ECF 44.)

After having filed the initial version of the administrative record in this case (ECF 45), the defendant filed a motion to dismiss, arguing that the plaintiff's claims in both the original and supplemental complaints were nonjusticiable.  (ECF 62.)  The defendant argued that the DLA "has not yet finally decided that it will indeed procure the ATAP at all," and no solicitation for ATAP or TAP was pending.  (*Id.* at 11.)  The plaintiff filed a motion (ECF 46) to enforce the decision of the Federal Circuit and a motion to complete the administrative record (ECF 51).

The defendant's motion to dismiss was granted:

> The defendant's motion to dismiss is granted because no relief remains available on the plaintiff's pending claims.  The DLA has rescinded the solicitations that violated the JWOD Act and [AbilityOne] regulations, and if the DLA wishes to procure the ATAP or the TAP, it must do so from SEKRI according to [AbilityOne] regulations.   Additionally, the DLA cannot be compelled to procure the ATAP more quickly.

*SEKRI III*, 163 Fed. Cl. at 591.  The plaintiff's motions were denied.  The plaintiff was nonetheless permitted to file an amended complaint alleging new claims it had raised during briefing and oral argument.

### D.    Current Claims

The plaintiff's amended complaint was due on January 6, 2023.  (*See* ECF 69.)  On January 4, 2023, the defendant filed a notice that the DLA would issue a solicitation to SEKRI for 50 percent of its ATAP requirement and a solicitation to Federal Prison Industries ("FPI"), another statutory mandatory source, for the other 50 percent of its ATAP requirement.  (ECF 75.)

On January 12, 2023, the plaintiff filed an amended complaint, which is currently pending and asserts three claims for relief.  (ECF 77.)  In its first claim, the plaintiff alleges that it is entitled to supply 100 percent of the DLA's ATAP requirement and that the DLA's solicitation to FPI for 50 percent of the DLA's ATAP requirement is unlawful.  (*Id.* at ¶¶ 120-24.)  Although the plaintiff's claim focuses on the DLA's issuance of a solicitation to FPI, the plaintiff also alleges that the DLA has unlawfully attempted to award a contract for ATAP to other potential suppliers.[3]

In its second claim for relief, the plaintiff alleges that the DLA has failed to accept the ATAP price that has been set by AbilityOne.  The plaintiff alleges that the DLA's objections to SEKRI's price are contrary to law.  (*Id.* at ¶¶ 125-28.)

In its third claim for relief, the plaintiff alleges that the DLA has acted in bad faith.  (*Id.* at ¶ 137.)

In sum, the plaintiff alleges that the defendant "continues to violate, knowingly, its obligation to procure all the Government's ATAP requirement from SEKRI, at the price established by [AbilityOne].  The fact that the Defendant keeps coming up with new and creative (and destructive) ways to do that is irrelevant."  (*Id.* at ¶ 134.)

The plaintiff requests a declaration that SEKRI is entitled to 100 percent of the DLA's ATAP requirement at the price established by AbilityOne, an injunction prohibiting the DLA from issuing a solicitation for ATAP to anyone other than SEKRI, attorney's fees, bid preparation and proposal costs, and other relief.[4]  (*Id.* at ¶¶ 134-38.)

On January 20, 2023, the defendant filed a notice that the DLA was unwilling to stay award of a contract to FPI while this litigation was pending.  (ECF 79.)  The plaintiff filed a motion for a temporary restraining order and preliminary injunction seeking to prohibit the defendant from awarding a contract to FPI while the case was pending.  (ECF 82.)

---

[3] The plaintiff alleges that a DLA employee retaliated against SEKRI by requesting that SourceAmerica, NIB, and FPI "join him in preventing SEKRI from obtaining an ATAP contract."  (ECF 77 at ¶ 116.)

[4] The plaintiff's request for bid preparation and proposal costs has already been rejected.  *SEKRI III*, 163 Fed. Cl. at 586.  The plaintiff still has not demonstrated that it has submitted a bid.  Accordingly, bid preparation and proposal costs remain unavailable.

On January 31, 2023, the plaintiff's motion for a preliminary injunction was denied, but the Court noted that the plaintiff's claim regarding the legality of a contract to FPI was "colorable." *SEKRI IV*, 2023 WL 1428644, at *1.

The opinion also set a briefing schedule for cross-motions for judgment on the administrative record. The administrative record was due on February 10, 2023, and the parties' cross-motions for judgment on the administrative record were due on February 24, 2023. The defendant filed the administrative record on February 10, 2023. (ECF 87.)

### E.    Additional Claims

On February 12, 2023, the defendant filed a notice that FPI had withdrawn its proposal to produce ATAP the day after the issuance of the *SEKRI IV* opinion. (ECF 89.) The defendant also noted that AbilityOne had issued a "correction to its Procurement List" in the Federal Register to reflect that SEKRI was the mandatory source of supply for only 50 percent of the DLA's ATAP requirement. (*Id.*) The defendant represented that the DLA would withdraw and reissue a solicitation to SEKRI for 50 percent of its ATAP requirement, and the DLA would issue a solicitation for the remaining 50 percent of its ATAP requirement to commercial sources for a competitive procurement pursuant to AbilityOne's "correction." (*Id.*)

Also on February 12, 2023, the plaintiff filed a motion for sanctions. (ECF 88.) On February 14, 2023, the defendant filed a motion that was construed as one to supplement the administrative record. (ECF 91.) On February 15, 2023, the plaintiff filed a motion to supplement its complaint. (ECF 92.) During a February 15 status conference, the plaintiff's motion for sanctions was denied without prejudice, and the defendant's motion to supplement the administrative record and the plaintiff's motion to supplement its complaint were granted. (ECF 93.)

On February 15, 2023, the plaintiff filed a supplemental complaint, which is also still pending. (ECF 94.) The plaintiff alleges that the defendant's filings are misleading and frivolous. (*Id.* at ¶¶ 145, 148.) The plaintiff challenges AbilityOne's correction to the procurement list as illegal. The plaintiff also challenges the DLA's withdrawal of the solicitation to SEKRI and the DLA's issuance of a competitive solicitation to commercial sources. (*Id.* at ¶¶ 150-52.) The plaintiff seeks the same relief as in its other pending complaint. (*Id.* at ¶¶ 157-60.)

On February 22, 2023, the plaintiff's motion to unseal the case and case filings, which had been pending since December 14, 2022, was resolved. (ECF 70.) Except for a handful of limited redactions to several documents in the administrative record, the case is now proceeding on the public docket.

### F.    Pending Cross-Motions

The defendant filed a notice on February 24, 2023, that the DLA "intends to take corrective action in this case by rescinding the final decision to procure 50 percent of [the DLA's

ATAP] requirement from a commercial source." (ECF 103.)  The defendant noted it would file a motion to dismiss and requested that the existing briefing schedule be vacated.

During a status conference held on February 27, 2023, the defendant explained that although the commercial solicitation had been rescinded, the DLA was seeking AbilityOne's approval to procure only 50 percent of its ATAP requirement from SEKRI.  The defendant explained that the DLA may reissue the solicitation to procure 50 percent of its ATAP requirement competitively once that approach has been approved by AbilityOne.  As a result, the defendant suggested that a motion to dismiss for mootness was the appropriate vehicle to resolve the plaintiff's claims before consideration of motions for judgment on the administrative record.  Although the Court expressed skepticism that the defendant's actions mooted the plaintiff's claims, the defendant was allowed to file a motion to dismiss before the parties filed cross-motions for judgment on the administrative record; the briefing schedule was adjusted accordingly.  (ECF 106.)

Following the status conference, the defendant filed a notice that, upon consideration of the Court's comments during the February 27 status conference, it no longer intended to file a separate motion to dismiss but wished to address the question of ripeness under a consolidated briefing schedule for cross-motions for judgment on the administrative record.  (ECF 107.)  The parties thereafter agreed to an expedited briefing schedule for cross-motions for judgment on the administrative record.  (ECF 108.)

On March 6, 2023, the plaintiff filed a motion for judgment on the administrative record (ECF 109), and the defendant filed a motion to dismiss and cross-motion for judgment on the administrative record (ECF 110).  The plaintiff filed its reply brief (ECF 113) on March 8, 2023, and the defendant filed its reply brief in the morning of March 9, 2023.  (ECF 114.)  Oral argument was held in the afternoon of March 9, 2023.

### G.     The Plaintiff's Ongoing Status as a Mandatory Source

Over the course of briefing on the plaintiff's motion for a preliminary injunction, the pending cross-motions, and the submission of the administrative record, additional context regarding the ATAP procurement has come to light.

SEKRI initially developed and produced ATAP pursuant to a manufacturing and development ("M&D") prototyping contract with the United States Army and its Natick, Massachusetts facility ("Army-Natick").  (AR 634.)  Under that contract, SEKRI was to develop and then produce 47,854 ATAP units over a period of approximately three years.  (AR 437.)

When AbilityOne published a notice in the Federal Register proposing to add ATAP to the JWOD mandatory-source procurement list, it noted that SEKRI would be the mandatory source for only 50 percent of the Army's ATAP requirement.  Procurement List; Proposed Additions, 84 Fed. Reg. 2,823-01 (Feb. 8, 2019).

The parties disagree as to whether AbilityOne intended to add SEKRI as the mandatory source of supply for 50 percent or for 100 percent of the Army's ATAP requirement.  A

document in the administrative record titled "Addition to the Procurement List for Decision" adds confusion rather than clarity. (AR 623-29.)  The first page of the document explains that SEKRI would be the mandatory source of supply for "50% of the requirement of the U.S. Army." (AR 623.)  The document noted elsewhere that SourceAmerica had recommended that SEKRI "be designated by the Commission as the mandatory source of supply for the ATAP based on its production of the product under the M&D [contract]," notably excluding any 50-percent limitation.  (AR 626.)  AbilityOne also analyzed the level of impact on current contractor sales the addition to the procurement list may cause:

> [ATAP] has never been procured commercially, and was prototyped by SEKRI under the abovementioned M&D contract. . . .  Under these circumstances, [AbilityOne] can determine that the addition of this requirement to the Procurement List will not cause severe adverse impact to the current contractor in accordance with [AbilityOne] regulation 41 CFR 51-2.4(a)(4), as no current contractor exists.

(Id.)  AbilityOne staff recommended that AbilityOne approve the ATAP "as suitable for addition to the [procurement list], in accordance with 41 C.F.R. § 51-2.4." (Id.)

The addition was made, however, "with the understanding that procurement under the JWOD Act shall be limited to that portion of the Government's requirement for the commodity which is not available or not required to be procured from Federal Prison Industries, Inc." (Id. (emphasis omitted).)  SourceAmerica had obtained a partial waiver of priority from FPI for five years or 120,000 ATAP units per year.  (AR 577-78.)  The quantity specified in the document of 120,000 ATAP units per year corresponds to approximately 50 percent of the DLA's current ATAP requirement.  (AR 322-23.)

AbilityOne staff recommended the addition of ATAP to the procurement list but did not specify whether ATAP would be mandatory for 50 percent or 100 percent of the Army's requirement.  (AR 627.)

AbilityOne commissioners voted unanimously to approve the addition of ATAP to the procurement list.  (AR 630-31.)  The plaintiff argues that the AbilityOne commissioners voted to add ATAP to the procurement list at the 100-percent rate; the defendant argues that the AbilityOne commissioners voted to add ATAP to the procurement list at the 50-percent rate. The record neither definitively confirms nor contradicts either party's argument; the record is unclear.

When AbilityOne officially added ATAP to the procurement list, however, it listed ATAP as mandatory for all the Army's requirement.  Procurement List; Additions and Deletions, 84 Fed. Reg. 11,935-01 (Mar. 29, 2019).  The 50-percent limitation found in the proposed notice was absent.

Internal AbilityOne documents in the administrative record reflect this inconsistency.  In April 2019, the ATAP was listed on the procurement list as mandatory only for 50 percent of the

7

Army's requirement. (AR 642-43.) In August and October 2019, however, the ATAP was listed as mandatory for 100 percent of the Army's requirement. (AR 652-53, 695-96.) In November 2019 and December 2022, the ATAP was again listed as mandatory for only 50 percent of the Army's requirement. (AR 526-27, 708-09.)[5] These internal AbilityOne documents do not acknowledge or address, let alone explain, the discrepancy.

On February 7, 2023, AbilityOne published the aforementioned "correction" to the procurement list in the Federal Register. Procurement List; Additions, 88 Fed. Reg. 7,967-01 (Feb. 7, 2023). The "correction" purports to acknowledge the mistake in the March 29, 2019 notice adding ATAP to the procurement list and provides that ATAP was mandatory for only 50 percent of the Army's requirement. *Id.*

### H.    The Solicitation to SEKRI

On February 17, 2023, the DLA issued a request for allocation or solicitation (SPE1C1-23-R-0051) to SEKRI. (ECF 110-1 at 6.)[6] When a DLA contracting officer emailed the solicitation to SourceAmerica representatives, she stated that the "solicitation quantities represent 50% of the requirements pursuant to the [AbilityOne] Federal Registry update on February 7, 2023." (*Id.* at 4.)

The solicitation contemplates an "indefinite delivery, indefinite quantity, firm-fixed-price contract with a three-year ordering period." (*Id.* at 6.) The guaranteed minimum quantity is 9,750 ATAP units, and the maximum quantity is 438,750 units. (*Id.*) The annual estimated quantity is 120,000 ATAP units for the first year and 117,000 ATAP units for each of the second and third years. (*Id.*)

---

[5] In parts of the administrative record, the procurement list reflects that SEKRI was the mandatory source of supply for the Department of Defense's ATAP requirement, not just the Army's ATAP requirement. (*See* AR 652.) Although the DLA is now seeking to procure ATAP, the Army remains the end-user of ATAP. Additionally, Judge Horn has held that the DLA was required to purchase an item on the procurement list from a mandatory source of supply even when the Federal Register provided that the mandatory source applied only to Army-Natick. *See Goodwill Indus. S. Fla. v. United States*, 162 Fed. Cl. 160, 177, 195-96 (2022). The defendant has not argued that the DLA is exempt from purchasing ATAP from SEKRI because the requirement only applied to the Army. Accordingly, the fact that the Federal Register listed ATAP as mandatory only for the Army does not affect analysis of the plaintiff's claims.

[6] The defendant appended the solicitation to its reply brief. During oral argument, the plaintiff orally moved to complete the administrative record with the documents appended to the defendant's brief. The defendant did not object. Accordingly, the exhibits are incorporated into the administrative record and considered in resolving the pending motions.

Elsewhere in the administrative record, a different DLA contracting officer notes the quantities that reflect 100 percent of the DLA's requirement: 19,500 ATAP units as a guaranteed minimum quantity, 234,000 ATAP units as the annual estimated quantity, and 877,500 ATAP units as the maximum quantity. (AR 322.)

In its solicitation to SEKRI for the ATAP procurement, the DLA left blank spaces for ATAP pricing. (ECF 110-1 at 14-15.)

## II.     JURISDICTION AND STANDING

The Court of Federal Claims has jurisdiction over "an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). Actions brought under this provision are typically called bid protests.

The plaintiff has alleged violations of law in connection with the DLA's proposed procurement of ATAP. (*See* ECF 77.) Accordingly, the plaintiff's claims fall within the bid-protest jurisdiction of the court.

As a mandatory source under the JWOD Act, the plaintiff is, as the Federal Circuit has held, an "interested party." *See SEKRI II*, 34 F.4th at 1073. The plaintiff therefore has standing to sue.

## III.    STANDARDS OF REVIEW

### A.     Motion to Dismiss

To determine subject-matter jurisdiction under RCFC 12(b)(1), the "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). When a plaintiff's jurisdictional facts are challenged, only those factual allegations that the government does not controvert are accepted as true. *Shoshone Indian Tribe of Wind River Rsrv. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). The court is not "'restricted to the face of the pleadings'" in resolving disputed jurisdictional facts. *Id.* (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied*, 512 U.S. 1235 (1994)). In such cases, courts may review evidence outside the pleadings. *Id.*

The plaintiff has the burden of establishing jurisdiction by a preponderance of the evidence. *Trusted Integration, Inc.*, 659 F.3d at 1163. If a court finds that it lacks subject-matter jurisdiction over any of the plaintiff's claims, RCFC 12(h)(3) requires dismissal of those claims.

Under RCFC 12(b)(6), dismissal "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). The court must both accept as true a complaint's well-pleaded factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and draw all reasonable inferences in favor of the non-moving party, *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). To

avoid dismissal under RCFC 12(b)(6), a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiff is entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

### B.     Motion for Judgment on the Administrative Record in Bid Protests

Review of a motion for judgment on the administrative record pursuant to RCFC 52.1 requires the court to make factual findings based on the administrative record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Genuine issues of material fact do not preclude judgment. *Id.* Rather, the court holds a trial on the administrative record and must determine whether a party has met its burden of proof based solely on the evidence contained in that record. *Id.* at 1355.

Bid protests require a two-step analysis. *See Bannum*, 404 F.3d at 1351. First, the court must determine whether the government's conduct is "arbitrary and capricious" or "not in accordance with law" under 5 U.S.C. § 706. *See* 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706; *Bannum*, 404 F.3d at 1351. A court must "determine whether '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009) (quoting *PGBA, LLC v. United States*, 389 F.3d 1219, 1225 (Fed. Cir. 2004)).

Second, if the government's conduct was "arbitrary and capricious" or "not in accordance with law," the court must then "determine, as a factual matter, if the bid protester was prejudiced by that conduct." *Bannum*, 404 F.3d at 1351. In a pre-award bid protest challenging the terms of a solicitation, a bid protestor was prejudiced if it demonstrates a "non-trivial competitive injury which can be addressed by judicial relief." *Weeks Marine*, 575 F.3d at 1362.

## IV.     DISCUSSION

The plaintiff's pending complaints raise three claims: whether the DLA must accept the price currently set for the ATAP by AbilityOne; whether the DLA can award a contract for a portion of its ATAP requirement to a supplier other than SEKRI; and whether the DLA has violated its duty of good faith and fair dealing.

### A.     Pricing Claim

The parties disagree as to whether the DLA is required to accept the price currently listed for ATAP on the procurement list. The plaintiff argues that the DLA cannot seek to negotiate a more favorable contract price for ATAP. The plaintiff seeks to compel the DLA to accept the same price Army-Natick accepted for a small number of ATAP prototypes under the M&D and follow-on contracts with SEKRI. The defendant argues that the plaintiff has stated an unripe claim upon which relief cannot be granted.

1.      **Legal Background**

AbilityOne sets prices for products on the procurement list, and those prices are binding on agencies seeking to procure items from the procurement list. *See* 41 U.S.C. § 8504(a) (requiring federal government entities to acquire products on the procurement list "at the price [AbilityOne] establishes"); 41 C.F.R. § 51-5.5(a) ("The prices for items on the Procurement List are fair market prices established by [AbilityOne] under authority of the [JWOD Act] . . . .")

The prices set by AbilityOne, however, are not permanent. The JWOD Act provides: "[AbilityOne] from time to time shall revise its price determinations with respect to [products and services on the procurement list] in accordance with changing market conditions." 41 U.S.C. § 8503(b).

Additionally, 41 C.F.R. § 51-2.7(b) provides: "Prices are revised in accordance with changing market conditions under [AbilityOne] procedures, which include negotiations between contracting activities and producing nonprofit agencies, assisted by central nonprofit agencies, or the use of economic indices, changes in nonprofit agency costs, or other methodologies permitted under these procedures."

Although cases interpreting this regulation are scarce, Judge Tapp has observed that AbilityOne's pricing procedure "explicitly includes the nonprofit agency in a collaborative price-setting process," and that AbilityOne "has the rulemaking authority to craft procurement procedures that include a price component." *Melwood Horticultural Training Ctr., Inc. v. United States*, 153 Fed. Cl. 723, 739, 741 (2021).

AbilityOne's Fair Market Pricing Policy 51.600 specifies that AbilityOne "has sole authority and responsibility for determining the [fair-market price] for products and services on the [procurement list] and in revising the [fair-market price] in accordance with changing market conditions." ¶ 5(a) (effective Sept. 3, 2015). This policy implicates procedures "intended to result in [r]ecommended [fair-market prices] that are fair and reasonable in relationship to the marketplace and found in negotiations between the Government contracting activity . . . and the designated [nonprofit agency]." *Id.* at ¶ 6(b). The policy also considers "the Government's socioeconomic interests" and the importance of "provid[ing] employment for people who are blind or have other significant disabilities." *Id.* at ¶ 6(c).

The policy also provides that "[t]here can be only one [fair-market price] per specific AbilityOne product . . . except where differences exist in packaging, delivery terms, or purchase volumes." *Id.* at ¶ 6(f). Additionally, "[w]hen multiple Contracting Activities and/or AbilityOne-participating nonprofit agencies establish contracts for the same AbilityOne product, the [fair-market price] shall be the same for each Contracting Activity." (*Id.*)

Regulations implementing the JWOD Act explicitly provide that AbilityOne should resolve any price disputes that arise in the context of a mandatory-source procurement. Section 51-6.15 of Title 41 of the Code of Federal Regulations provides:

11

> Disputes between a nonprofit agency and a contracting activity arising out of matters covered by parts 51–5 and 51–6 of this chapter shall be resolved, where possible, by the contracting activity and the nonprofit agency, with assistance from the appropriate central nonprofit agency. Disputes which cannot be resolved by these parties shall be referred to [AbilityOne] for resolution.

Part 51-5, referenced in 41 C.F.R. § 51-6.15, includes § 51-5.5, a regulation governing the establishment and revision of fair-market prices for items on the procurement list and regulations; § 51-5.4, a regulation governing federal agencies' ability to obtain a purchase exception; and § 51-5.8, a regulation requiring AbilityOne to investigate any alleged violations of the JWOD Act or implementing regulations by the government.

Pursuant to the authority of 41 C.F.R. § 51-6.15, AbilityOne has established a process for resolving price impasses. U.S. AbilityOne Commission Policy 51.640 (effective Sept. 16, 2015). Either SEKRI or the DLA may initiate this process by emailing the Executive Director of AbilityOne. Once that process is initiated, both parties have an opportunity to present their business cases to AbilityOne, which will make a final decision on a binding price "in the most expeditious manner." *Id.*

Given the existence of AbilityOne's price-impasse procedure, the plaintiff's price claim poses two issues: ripeness and whether it states a claim for relief.

### 2.     Ripeness

The ripeness doctrine "prevent[s] the courts, 'through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also [protects] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Sys. Application & Techs., Inc. v. United States*. 691 F.3d 1374, 1383 (Fed. Cir. 2012) (quoting *Abbot Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

Ripeness encompasses two factors: the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration. *Id.* Regarding the first factor, the challenged government conduct must constitute "a final agency action." *Id.* at 1384; *see also NSK LTD. v. United States*, 510 F.3d 1375, 1384 (Fed. Cir. 2007) ("Generally, an agency decision is not ripe for judicial review until the allegedly offending agency has adopted a final decision.") A disappointed bidder in a bid protest generally must exhaust its administrative remedies before judicial review is appropriate. *See 22nd Century Techs., Inc. v. United States*, 57 F.4th 993, 999 (Fed. Cir. 2023).

The parties have not indicated that they have engaged in the price-impasse process to ensure the price for ATAP listed on the procurement list is the current fair-market price. *See* 41 C.F.R. § 51-2.7. In fact, the procurement list reflects that the price for ATAP has remained constant between October 2019 and December 2022. (*Compare* AR 695-96 (October 2019 pricing) *with* AR 526-27 (December 2022 pricing).) Therefore, the price for ATAP has not been

"revised in accordance with changing market conditions under [AbilityOne] procedures."
41 C.F.R. § 51-2.7(b).

The parties' failure to seek administrative review of the fair-market price for ATAP by
AbilityOne precludes judicial review of the plaintiff's claim. The DLA's refusal to accept
SEKRI's current ATAP price appears to be attributable in part to the fact that the ATAP price
has not been revised since SEKRI and Army-Natick entered into the M&D prototyping contract.
Neither party has invoked the price-impasse process. AbilityOne has thus taken no "final agency
action" regarding a current fair-market price for the ATAP. *See Sys. Application & Techs.*, 691
F.3d at 1383-84. Until AbilityOne decides on a fair-market price for ATAP that should apply to
a contract between SEKRI and the DLA, the price dispute between the parties is unreviewable.

Furthermore, the plaintiff has not demonstrated that it will be harmed by the withholding
of immediate judicial consideration of the parties' pricing dispute. The plaintiff has the same
opportunity available to the DLA to engage in the price-impasse program conducted by
AbilityOne. The plaintiff has not explained its reluctance to participate in that program and can
show no injury from having to do so.

The plaintiff's price claim is therefore unripe and must be dismissed pursuant to RCFC
12(b)(1) and RCFC 12(h)(3).

### 3.  Stating a Claim for Relief

Beyond the lack of ripeness, the plaintiff does not allege facts plausibly suggesting that
the DLA has violated the law by seeking to negotiate a different price for the ATAP.

The plaintiff argues that the DLA has "*zero* legal authority" to set a price for ATAP.
(ECF 109 at 7 (emphasis in original).) Although the DLA may not unilaterally set or revise the
price for ATAP, the regulations implementing the JWOD Act do not support the plaintiff's
argument. Prices for items on the procurement list may be revised through "negotiations
between contracting activities and producing nonprofit agencies . . . ." 41 C.F.R. § 51-2.7(b).
The defendant is therefore proceeding in accordance with applicable regulations that specifically
authorize the defendant's approach. Because the defendant is entitled to negotiate an ATAP
price, the plaintiff cannot sustain a claim that the defendant is acting illegally.

The plaintiff argues that under AbilityOne Policy 51.600, the DLA is required to accept
the ATAP price from the M&D contract because there can be only one fair-market price per
product on the procurement list. The policy, however, provides an explicit exception when
"differences exist in . . . purchase volumes." The DLA is contemplating purchasing a
substantially larger number of ATAP units than Army-Natick purchased under the M&D
contract. Furthermore, nothing in the policy prohibits a government agency from negotiating a
different price for a product on the procurement list. To the contrary, both contracting federal
agencies and qualified nonprofit agencies are required to cooperate in negotiations to develop or
revise a fair-market price. AbilityOne Fair Market Pricing Policy 51.600 at ¶¶ 5(b), 5(f)-(g).

AbilityOne procedures contemplate that disputes over pricing will arise. A regulation provides that pricing disputes be referred to AbilityOne for resolution. 41 C.F.R. § 51-6.15. AbilityOne has established a price-impasse procedure for instances, like the one at issue here, when the parties cannot agree on a price. The plaintiff argues that the defendant has put nothing in the record suggesting that the DLA is participating in any impasse proceeding, but that argument misses the point. Pursuant to the regulations implementing the JWOD Act, price disputes should be resolved with the assistance of AbilityOne, not in a judicial forum. *See* 41 U.S.C. § 8504(a); 41 C.F.R. § 51-6.15; *Melwood*, 153 Fed. Cl. at 739, 741.

Disrupting negotiations to require specific pricing for future ATAP procurements would be an improper exercise of judicial authority and undercut the extensive regulatory regime in place to address pricing disputes. *Cf. Parcel 49C L.P. v. United States*, 31 F.3d 1147, 1154 (Fed. Cir. 1994) (holding that the proper remedy in a bid protest merely restores the *status quo* before any illegal action and accommodates an agency's present and future needs).

The JWOD Act and its implementing regulations reflect that AbilityOne has the authority to determine the current fair-market price for products on the procurement list and to resolve price impasses. The complaint fails to allege a violation of law and therefore does not state a claim. The plaintiff's pricing claim must be dismissed pursuant to RCFC 12(b)(6).

### 4.    Conclusion

The plaintiff's pricing claim is unripe and must be dismissed under RCFC 12(b)(1). Additionally, the plaintiff has failed to state a claim upon which relief can be granted regarding the pricing dispute between the parties. The plaintiff's pricing claim is therefore also dismissed pursuant to RCFC 12(b)(6).

### B.    Allocation Claim

The plaintiff argues that it is entitled to supply 100 percent of the DLA's requirement for the ATAP. The defendant argues that the plaintiff's claim is nonjusticiable. On the merits, the defendant argues that the plaintiff is entitled to supply only half of the DLA's ATAP requirement.

### 1.    Justiciability

The defendant argues that the plaintiff's entire third complaint is moot because the ATAP procurement from FPI has been canceled. (ECF 110 at 7.) The defendant also argues that the plaintiff's complaint should be dismissed because the plaintiff "seeks an advisory opinion about a non-existent procurement" to another potential ATAP supplier for which the DLA is currently seeking a purchase exception from AbilityOne. (*Id.* at 8.)

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167,

190 (2000). A defendant's voluntary cessation of allegedly illegal conduct renders a case moot when (1) there is no reasonable expectation that the alleged violation will recur, and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

The defendant misunderstands the scope of the plaintiff's pending complaint. Although the plaintiff objected to the procurement of ATAP from FPI, the plaintiff has alleged that the defendant has "violate[d], knowingly, its obligation to procure all of the Government's ATAP requirement from SEKRI, at the price established by [AbilityOne]. The fact that the Defendant keeps coming up with new and creative (and destructive) ways to do that is irrelevant." (ECF 77 at ¶ 134.) The plaintiff's complaint thus broadly encompasses all the DLA's efforts to divert any portion of the ATAP procurement from SEKRI.

The defendant argues that SEKRI is receiving all the ATAP that the DLA is currently seeking to procure. This argument is belied by the statement of the DLA contracting officer in the administrative record explaining to SourceAmerica that the solicitation most recently issued to SEKRI represents "50% of the requirements" that the DLA has for the ATAP. (ECF 110-1 at 4.)

On this record, the defendant has not established that there is no reasonable expectation that the alleged violation will recur. *See Friends of the Earth*, 528 U.S. at 190; *Cnty. of Los Angeles*, 440 U.S. at 631. To the contrary, on the merits, the defendant continues to assert that the DLA and AbilityOne have lawfully limited the scope of the award of an ATAP contract to SEKRI. Given these repeated assertions by the defendant, the plaintiff's complaint is not moot.

Additionally, the plaintiff's request for relief does not constitute a request for an advisory opinion. An advisory opinion involves "questions that cannot affect the rights of litigants in the case before them," or advises "what the law would be upon a hypothetical state of facts." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). The plaintiff asserts its right to the benefits of its status as the mandatory source for ATAP; the plaintiff also alleges specific facts based on events that have already occurred. Under *Rice*, the plaintiff is not seeking an "advisory opinion."

The defendant argues that the case is nonjusticiable because any relief would be impermissibly prospective and hypothetical. The plaintiff, however, has suggested two specific injunctive measures. According to the plaintiff, if it prevails the relief ordered should: (1) enjoin the solicitation issued to SEKRI as containing an unlawful quantity limitation; and (2) enjoin the recent "correction" to the Federal Register providing that SEKRI was a mandatory source for only 50 percent of the DLA's ATAP requirement.

The plaintiff's suggested injunctive relief is neither impermissibly prospective nor hypothetical. Judges of this court routinely enjoin unlawful solicitations in bid protests. *E.g.*, *Goodwill Indus. S. Fla. v. United States*, 162 Fed. Cl. 160, 213 (2022). That authority extends to pre-award protests for which the eventual procurement remains hypothetical in some way. *E.g., Weeks Marine*, 575 F.3d 1352.

15

In bid protests, the Court of Federal Claims has "broad equitable powers to fashion an appropriate remedy" to return the procurement process to the *status quo* before the illegal action occurred. *Turner Constr. Co., Inc. v. United States*, 645 F.3d 1377, 1388 (Fed. Cir. 2011). If the plaintiff prevails on the merits of its claim that AbilityOne's correction to the procurement list was unlawful, the Court has the equitable authority to order AbilityOne to change SEKRI's status on the procurement list to reflect that it is a mandatory source for 100 percent of the DLA's ATAP requirement. Accordingly, the plaintiff's proposed injunctive relief is sufficiently narrow to comport with the jurisdiction conferred on the Court of Federal Claims by the Tucker Act. *See also Sys. Application*, 691 F.3d at 1382 (explaining that the defendant's objection to the injunctive relief concerned "the scope of the Court of Federal Claims' equitable powers," not "an issue of Tucker Act jurisdiction").

If the defendant had asserted that it was reconsidering the need for ATAP or had decided not to procure any ATAP, the plaintiff's complaint could be construed as moot or as seeking an advisory opinion. *See SEKRI III*, 163 Fed. Cl. at 577-78. But when the defendant repeatedly asserts that it needs the ATAP, and the record reflects that it still intends to procure half of it from sources other than the plaintiff, then the plaintiff's claim is not moot; the plaintiff is seeking to vindicate a specific right to manufacture all ATAP the defendant plans to procure. There is nothing advisory about the relief the plaintiff may secure if it prevails on the merits of that claim.

The defendant argues that the plaintiff's claim is not ripe because the DLA may change its mind regarding the quantity of ATAP units it needs, and AbilityOne may adjust SEKRI's status on the procurement list. Acceptance of the defendant's justiciability arguments would significantly narrow the court's jurisdiction over pre-award bid protests. The defendant is always able to assert that the contracting agency could hypothetically change its approach in the future and decide to pursue a different procurement strategy. Few pre-award bid protests would ever be justiciable under the defendant's interpretation of the law. The court is tasked with evaluating the facts on the ground and determining whether a legal violation exists. The record here is sufficiently developed to enable judicial review and to support the exercise of jurisdiction over the plaintiff's claims.

In sum, the plaintiff's claim that it is entitled to 100 percent of the DLA's ATAP requirement is justiciable.

### 2.   Merits

There are three issues that must be resolved to address the plaintiff's claim: (1) whether AbilityOne's addition of ATAP to the procurement list complied with regulatory requirements; (2) whether some other reason can justify the DLA's limited procurement of ATAP from SEKRI; and (3) whether the solicitation the DLA issued to SEKRI was for 100 percent or for 50 percent of the DLA's ATAP requirement.

### a.   Addition of ATAP to the Procurement List

As summarized above, the parties disagree as to whether AbilityOne actually voted to add ATAP to the procurement list in full or in part.

Even accepting the defendant's argument that AbilityOne voted to add only 50 percent of the Army's ATAP requirement to the procurement list, that act of adding ATAP to the procurement list must comport with AbilityOne's regulations.

Regulations implementing the JWOD Act permit AbilityOne to designate "*where appropriate*, any limitation on the portion of the commodity which must be procured under the JWOD Act." 41 C.F.R. § 51-2.8(b) (emphasis added). Other regulations give meaning to the term "appropriate."

Another AbilityOne regulation implementing the JWOD Act provides that "[w]hen [AbilityOne] determines that a proposed addition [to the procurement list] is likely to have a severe adverse impact on a current contractor, it takes this fact into consideration in deciding . . . to add only a portion of the Government requirement for the item." 41 C.F.R. § 51-2.5. This regulation does not apply when an item is already on the procurement list. *Goodwill Indus. S. Fla. v. United States*, 162 Fed. Cl. at 201.

"Impact" on current contractors is one of four criteria AbilityOne is authorized to consider in deciding whether a product is suitable to add to the procurement list. 41 C.F.R. § 51-2.4(a). The other three factors are the employment potential for persons who are blind or have other severe disabilities; the qualifications of the nonprofit agency; and the capability of the nonprofit agency to meet government quality standards and delivery schedules. *Id.*

AbilityOne may also consider other "information it deems pertinent, including comments on a proposal published in the Federal Register to add the commodity or service to the Procurement List and information submitted by Government personnel and interested persons." *Id.* § 51-2.4(b). AbilityOne does not consider price, however, in determining whether an item is suitable for addition to the procurement list. *Id.*

No other regulation provides any other basis on which AbilityOne may limit the scope of the requirement of an item on the procurement list. When a commodity is suitable to be furnished by a qualified nonprofit agency, AbilityOne must add that item to the procurement list. 41 C.F.R. § 51-2.2(b) (providing that AbilityOne is responsible for "[determining] which commodities and services procured by the Federal Government are suitable to be furnished by qualified nonprofit agencies employing persons who are blind or have other severe disabilities and add[ing] those items to [AbilityOne]'s Procurement List").

Reading the regulations together, there is a limited universe of reasons why an item could be found to be suitable for only limited inclusion on the procurement list. *Cf. Goodwill*, 162 Fed. Cl. at 201 (rejecting a limitation on scope for items on the procurement list when not explicitly permitted by regulations). Primarily, an item may be included only in part if full addition of the item would adversely affect current contractors for the product. 41 C.F.R. § 51-2.5.

Alternatively, an item may not be suitable for full inclusion on the procurement list based on a factor set out in 41 C.F.R. § 51-2.4. For example, perhaps full inclusion would not generate additional employment for persons who are blind or have severe disabilities. *Id.* § 51-2.4(a)(1). Alternatively, the nonprofit agency may not be capable of fulfilling the government's full

17

requirements according to needed quality standards and delivery schedules.  *Id.* § 51-2.4(a)(3).
AbilityOne may also consider limiting the scope of an addition to the procurement list if it
receives comments in response to proposed additions to the Federal Register or if government
personnel comment.  *Id.* § 51-2.4(b).

    None of those reasons apply in this case.  AbilityOne explicitly found that ATAP had
"never been procured commercially, and was prototyped by SEKRI under [an] M&D contract."
(AR 626.)  "[N]o current contractor [for ATAP] exists."  (*Id.*; *see also* AR 633 (finding "no
impact" to any other contractors).)  Accordingly, the addition of ATAP to the procurement list
could not adversely affect any current contractor.  *See* 41 C.F.R. § 51-2.5.

    AbilityOne determined that adding ATAP to the procurement list would "help [fill
SEKRI's] excess capacity."  (AR 625.)  Further, "[i]f additional sewing personnel are needed,
SEKRI has former employees who could be called back to work."  SEKRI had successfully
completed the full requirements of the M&D contract.  (*Id.*)  An AbilityOne employee
commented: "All suitability criteria have been met and are adequately documented."  (AR 633-
34.)  Accordingly, AbilityOne did not find that full inclusion on the procurement list would not
generate additional employment opportunities for SEKRI's severely disabled workers or that
SEKRI was incapable of meeting the government's full requirements.  41 C.F.R. §§ 51-2.4(a)(1),
51-2.4(a)(3).

    Additionally, AbilityOne received no comments in response to the notice published in the
Federal Register or from other government employees.  (AR 626.)  AbilityOne deemed no other
information "pertinent."  *See id.*[7]

    AbilityOne did not comply with its own regulations for limiting the scope of the addition
of ATAP to the procurement list.  *See* 41 C.F.R. §§ 51-2.4, 51-2.5.  The purported limitation of
50 percent to the inclusion of ATAP on the procurement list is therefore contrary to law.  In the

---

    [7] The only reason plausible from the record as to why SEKRI would be the mandatory
source for just 50 percent of the government's requirement is because FPI had granted only a
partial waiver.  FPI had waived its priority for ATAP for five years for up to 120,000 ATAP
units annually.  (AR 577.)  That quantity corresponds to approximately 50 percent of the DLA's
current ATAP requirement.  (*See* AR 328 ("On October 26, 2022, FPI exercised its priority over
50% of the total requirement and waived its priority over the remaining 50% of the total
requirement."))  If accurate, and provided that FPI can legally produce ATAP, the 50-percent
limitation would be lawful because FPI is a superior mandatory source to JWOD Act suppliers
for products on the procurement list.  *See* 48 C.F.R. § 8.704.

    Regardless, the scope limitation would then apply only if FPI were involved in the
procurement.  The defendant has filed a notice indicating that FPI withdrew its proposal to
produce ATAP and is no longer participating in the ATAP procurement.  (ECF 89.)  Accordingly,
the plausible reading of the scope limitation does not affect analysis of the present dispute, and
AbilityOne's scope limitation is still contrary to AbilityOne regulations.

absence of any rationale in the record, AbilityOne's scope limitation for ATAP on the procurement list is arbitrary and capricious.  *E.g.*, *GHS Health Maintenance Org., Inc. v. United States*, 536 F.3d 1293, 1302 (Fed. Cir. 2008).  Accordingly, even accepting the defendant's argument that AbilityOne voted to designate SEKRI as the mandatory source for only 50 percent of the Army's ATAP requirement, that designation was unlawful.

### b.   Scope Modification in the Federal Register

Setting aside the lawfulness of the addition of ATAP to the procurement list, it appears that ATAP was added to the procurement list in full.  Procurement List; Additions and Deletions, 84 Fed. Reg. 11,935-01 (Mar. 29, 2019).  Furthermore, SEKRI appeared on the procurement list as the mandatory source for 100 percent of the Department of Defense's ATAP requirement at various times during the past four years.  (AR 652-53, 695-96.)

Judge Horn's decision in *Goodwill* is instructive regarding the legality of competitively procuring any portion of a product on the procurement list from a producer other than the mandatory source.  *See* 162 Fed. Cl. 160.

Under the facts giving rise to *Goodwill*, AbilityOne added Women's Improved Hot Weather Combat Uniform ("IHWCU") Trousers to the procurement list and indicated that the plaintiff, Goodwill Industries of South Florida, Inc. ("Goodwill"), was the mandatory source for 50 percent of the Department of Defense's requirement.  *Id.* at 178-79.  Unlike in this case, the formal addition of the IHWCU Trousers to the procurement list was consistent with the notice of the proposed addition first published in the Federal Register.  *Id.* at 176-77.  The DLA sought to procure the IHWCU Trousers competitively from small businesses.  *Id.* at 182-83.

The plaintiff protested the issuance of solicitations to any contractor other than Goodwill.  *Id.* at 183-84.  The defendant argued that the 50-percent scope limitation justified the DLA's commercial solicitation.  *Id.* at 184.  Based on the language of the JWOD Act, Judge Horn held, in a comprehensive and carefully reasoned opinion, that the DLA was required to purchase all the required IHWCU Trousers from Goodwill regardless of the limitation to 50 percent that AbilityOne had set in the Federal Register notice.  *Id.* at 197.  Judge Horn undertook a detailed analysis of the JWOD Act and its implementing regulations to conclude that the 50-percent limitation in the Federal Register notice was unlawful:

> It would be inconsistent, therefore, to read the JWOD Act to allow AbilityOne to limit the procurement of Women's IHWCU Trousers to only 50% of Army-Natick's needs without first making a finding that the Women's IHWCU Trousers would not be "available within the period required by the entity" from a JWOD Act qualified nonprofit.

*Id.* at 203 (quoting 41 U.S.C. § 8504(a)).

Although *Goodwill* is not binding, Judge Horn's decision in *Goodwill* is highly persuasive, especially given the similar facts and legal issues between that case and the present one.  The Court adopts Judge Horn's analysis and applies it to the present case.

Case 1:21-cv-00778-RAH   Document 115   Filed 03/13/23   Page 20 of 25

The JWOD Act provides that an "entity of the Federal Government intending to procure a product or service on the procurement list . . . *shall* procure the product or service from a qualified nonprofit agency . . . if the product or service is available within the period required by the entity." 41 U.S.C. § 8504(a) (emphasis added). Aside from availability, the only other statutory exception concerns procurements for products produced by FPI, which is a superior mandatory source to JWOD Act mandatory sources. *Id.* § 8504(b).

A regulation implementing the JWOD Act provides that the central nonprofit agency shall issue a purchase exception when the qualified nonprofit agency "cannot furnish a commodity or service within the period specified, and [the] commodity or service is available from commercial sources in the quantities needed and significantly sooner than it will be available from the nonprofit agency(ies)." 41 C.F.R. § 51-5.4(a). A purchase exception may also be granted "when the quantity involved is not sufficient to be furnished economically by the nonprofit agency(ies)." *Id.* § 51-5.4(b). *See also id.* § 51-6.7(b) (allowing purchase exceptions when the nonprofit agency cannot meet a government entity's requirements). "Ordering offices may acquire supplies or services on the Procurement List from commercial sources only if the acquisition is specifically authorized in a purchase exception granted by the designated central nonprofit agency." 48 C.F.R. § 8.706(a).

Although 41 C.F.R. §§ 51-2.5 and 51-5.3 permit AbilityOne to limit the scope of an item on the procurement list, those regulations do not apply when an item is already on the procurement list and the qualified nonprofit agency is available to furnish 100 percent of the government's requirement. In *Goodwill*, Judge Horn held that these regulations do:

> not give AbilityOne, the appropriate central nonprofit agency, or procuring agencies, the discretion to unilaterally change the scope of the Procurement List items at issue in this protest without first making the findings required by the JWOD Act and its implementing regulations that qualified nonprofits could not meet the solicitation requirements in the time required by the procuring agency.

162 Fed. Cl. at 201.

In short, once an item is on the procurement list, it is only appropriate to limit the mandatory nature of that item if a purchase exception has been granted. *Goodwill*, 162 Fed. Cl. at 200 ("Only after AbilityOne or the appropriate central nonprofit agency grants a purchase exception to procure the remainder of the items from a non-JWOD Act qualified source, can the item [be] procured from a commercial supplier or a different set aside source.")

The plaintiff is available to produce the entire quantity of ATAP the DLA requires within the time required by the DLA. (*E.g.*, AR 245 (a SourceAmerica employee noting in August 2022 that "SEKRI was excited and ready to produce the [234,000 ATAP units annually] to meet DLA's immediate needs.")) The defendant has not disputed that fact. Nothing in the record undercuts the plaintiff's claim that it can satisfy the defendant's requirements. The defendant

has neither obtained a purchase exception nor demonstrated that a purchase exception is appropriate under 41 C.F.R. § 51-5.4.

The superior mandatory source, FPI, is no longer involved in this procurement, and no other mandatory source is authorized to produce ATAP. Accordingly, no statute or regulation permits the DLA to procure ATAP from any source other than SEKRI. While the DLA is not under any obligation to procure ATAP, if the DLA decides to procure ATAP, the DLA remains under the "affirmative obligation" to procure it from SEKRI. *SEKRI II*, 34 F.4th at 1073.

Once the ATAP was added to the procurement list as a 100 percent mandatory procurement (and, as previously explained, in the absence of any basis supported by AbilityOne's own regulations, the designation of SEKRI as the mandatory source had to be for 100 percent), any proposed deletion of a portion of the ATAP requirement on the procurement list required AbilityOne to comply with 41 C.F.R. § 51-6.8. That regulation requires that before AbilityOne may delete an item from the procurement list it must first determine that "none of the nonprofit agencies participating in the AbilityOne Program are capable and desirous of furnishing the commodity or service to the Government," or that "the commodity or service is no longer suitable for procurement from nonprofit agencies employing people who are blind or have other severe disabilities." AbilityOne has made neither finding, and neither factor applies.[8]

AbilityOne's attempted "correction" of the procurement list is therefore unlawful and invalid. AbilityOne has not issued a purchase exception for ATAP, and no purchase exception is currently appropriate. AbilityOne also has not undertaken any of the procedures necessary to delete an item from the procurement list.

### c.     The Solicitation to SEKRI

The defendant argues that "all that is in the procurement pipeline now is directed at SEKRI" because no commercial solicitation is currently pending. (ECF 114 at 8.) The defendant argues that SEKRI is therefore receiving a solicitation to produce all the ATAP the DLA currently needs.

This argument is unsupported by the administrative record and must be rejected. When the DLA contracting officer issued the solicitation to SEKRI on February 17, 2023, she

---

[8] The plaintiff argues that the correction to the Federal Register is unlawful because it is signed only by AbilityOne staff and therefore cannot override a decision by the AbilityOne commissioners. The "correction" to the Federal Register was signed by the AbilityOne Acting Director of Business Operations. Procurement List; Additions, 88 Fed. Reg. 7,967-01 (Feb. 7, 2023). The Federal Register notice purporting to add ATAP to the procurement list for all the Army's requirement, however, was also signed by the AbilityOne Deputy Director of Business Operations. Procurement List; Additions and Deletions, 84 Fed. Reg. 11,935-01 (Mar. 29, 2019). There is no evidence that AbilityOne staff have acted *ultra vires* in contradiction to the intent of AbilityOne commissioners. The plaintiff's argument must be rejected.

explained that the "solicitation quantities represent 50% of the requirements pursuant to the Ability One Commission's Federal Registry update on February 7, 2023." (ECF 110-1 at 4.) The solicitation contemplates an average estimated quantity of 117,000-120,000 ATAP units. (*Id.* at 6.) On August 12, 2022, a DLA employee informed SourceAmerica that this quantity was "for 50% of the requirements." (AR 247.) On October 20, 2022, the DLA employee also wrote that "100% of the requirements" corresponded to an annual estimated quantity of 234,000 ATAP units, and "50% of the requirements" corresponded to an annual estimated quantity of 117,000 ATAP units. (AR 322-23.)

Accordingly, the current solicitation pending to SEKRI duplicates AbilityOne's error and is therefore unlawful.

### 3.  Prejudice

Having resolved the merits of the plaintiff's claims, finding prejudice is relatively straightforward. AbilityOne erred by unlawfully limiting the scope of SEKRI's status as a mandatory source of ATAP supply on the procurement list. The DLA erred by attempting to procure ATAP from sources other than SEKRI. Those errors caused SEKRI to suffer a "non-trivial competitive injury" in the form of an unlawful scope limitation in the solicitation pending to SEKRI. *Weeks Marine*, 575 F.3d at 1361. SEKRI need show no more to demonstrate prejudice. *Id.*

### C.  Bad-Faith Claim

In its pending complaints, the plaintiff has alleged that the DLA has acted in bad faith. The plaintiff has chosen not to address that claim in its motion for judgment on the administrative record, explaining:

> SEKRI is not addressing its third present claim (in the Second and Third Supplemental Complaints) regarding "[e]nsur[ing] that contractors receive impartial, fair, and equitable treatment," FAR 1.602-2(b), in this brief. The reason is that the Defendant has excluded from the administrative record every single document regarding that claim, despite extensive e-mail correspondence between respective counsel. SEKRI, a tiny nonprofit whose priority is to create and sustain employment for the disabled, should not have to bear the effort and expense of forcing the Defendant to comply with the well-established rules regarding filing the administrative record. . . . Therefore, SEKRI respectfully suggests that the proper disposition of the third present claim (the impartiality claim) is dismissal without prejudice.

(ECF 109 at 39 n.57.)

The plaintiff's third claim alleging bad faith is dismissed without prejudice. Even were this claim to be considered, it would not produce additional relief for the plaintiff at this stage.

## V.     RELIEF

The only remaining issue is the appropriateness of injunctive relief.  The plaintiff seeks an injunction restoring SEKRI's status as a mandatory source of ATAP without the 50-percent scope limitation and enjoining the solicitation the DLA issued to SEKRI.[9]

A court must consider four factors in deciding whether injunctive relief is proper:

> (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

*PGBA, LLC v. United States*, 389 F.3d 1228-29 (Fed. Cir. 2004).

For its allocation claim, the plaintiff has succeeded on the merits, so the first factor for injunctive relief is met.

### A.     Irreparable Harm

The plaintiff argues that it stands to suffer the loss of investment in production of the ATAP and employees who face few, if any, similar work opportunities, if an injunction is not issued.  The plaintiff argues it has invested substantial time and resources into monitoring and contesting the DLA's actions regarding the ATAP procurement despite the DLA's affirmative obligation to ensure its compliance with the JWOD Act.

The loss of potential revenue and profits may constitute irreparable harm.  *See Springfield Parcel C, LLC v. United States*, 124 Fed. Cl. 163, 194 (2015).  The plaintiff's assertion supports a finding that it will suffer irreparable harm in the absence of an injunction.

---

[9] The plaintiff also seeks an injunction compelling the DLA to order ATAP from SEKRI at the current price on the procurement list.  The plaintiff's claim regarding the pricing dispute has been dismissed so no relief is appropriate for that claim.  Additionally, the DLA cannot be ordered to procure ATAP.  *See SEKRI III*, 163 Fed. Cl. at 588-89 ("The decision of whether to procure the ATAP remains vested in the DLA.")  Accordingly, those aspects of the plaintiff's requested injunctive relief are denied.

Additionally, in *SEKRI III*, the Court held that SEKRI "cannot claim entitlement to bid preparation and proposal costs" because it had never submitted a bid.  163 Fed. Cl. at 587.  The plaintiff still has not demonstrated that it has submitted a bid.  Accordingly, as noted in footnote 4 above, the plaintiff's request for bid preparation and proposal costs is denied.

### B.        Balance of Hardships

The plaintiff argues that any harm to the DLA is of its own making and therefore does not outweigh hardship to SEKRI.  The defendant argues that an injunction would harm the DLA by interfering with processes to procure an item necessary to national security.

In fashioning relief in a bid protest, Congress has enjoined "the courts [to] give due regard to the interests of national defense and national security . . . ."  28 U.S.C. § 1491(b)(3).  The selection of a remedy for a violation of procurement law is at its most deferential in dealing with defense and national-security procurements.

Balanced against the statutory dictate of the Tucker Act in this case is the obligation established by the JWOD Act.  AbilityOne and the DLA have violated the JWOD Act and its implementing regulations.  Underlying the determination of a violation of the JWOD Act is the finding that the plaintiff can produce all the ATAP required by the DLA within the time required.  If the plaintiff could not satisfy those parameters, the DLA would have been able to move forward through the established process to request that AbilityOne grant a purchase exception.  Because the DLA cannot satisfy the test for obtaining a purchase exception, it cannot show injury from an injunction requiring it to comply with the law and acquire 100 percent of its ATAP requirement from SEKRI.

To the extent the DLA now displays a sense of urgency to procure ATAP, that urgency is entirely of the DLA's own creation.  The DLA delayed deciding whether and how to procure ATAP for many months after the remand from the Federal Circuit, and then the DLA made a series of decisions that were legally questionable.  The DLA could have ended the litigation at any time by ordering ATAP directly from SEKRI or initiating the AbilityOne process for resolving price impasses promptly upon remand.

With an injunction in place, the parties may expeditiously resolve their pricing dispute with the aid of AbilityOne, and the DLA can reissue an allocation request to SEKRI reflecting 100 percent of its ATAP requirement.  The DLA will be able to equip the Army with ATAP in a timely manner.  In sum, an injunction would impose no cognizable hardship on the defendant.

### C.        Public Interest

"There is an overriding public interest in preserving the integrity of the procurement process by requiring the government to follow its procurement regulations."  *Hospital Klean of Tex, Inc. v. United States*, 65 Fed. Cl. 618, 624 (2005).  The public interest militates in favor of injunctive relief, as AbilityOne and the DLA will be required to follow the JWOD Act and its implementing regulations.

An injunction also furthers the public interest by protecting a nonprofit agency that employs the severely disabled.  *See SEKRI II*, 34 F.4th at 1066.

Accordingly, all four factors support injunctive relief.  AbilityOne is enjoined and directed to update SEKRI's status to be a mandatory source for 100 percent of the ATAP requirement.  The unlawful solicitation issued by the DLA to SEKRI is enjoined.

## VI.    CONCLUSION

The price dispute between the parties is not ripe and presents a claim upon which no relief can be granted.  Accordingly, the plaintiff's claim related to the pricing dispute is dismissed pursuant to RCFC 12(b)(1) and 12(b)(6).

The plaintiff's claim that the DLA has acted in bad faith is dismissed without prejudice.

SEKRI is the mandatory source of supply for 100 percent of the Department of Defense's ATAP requirement.  No statutory or regulatory exception currently permits AbilityOne to limit the scope of ATAP on the procurement list.  The DLA cannot procure any portion of its current ATAP requirement from any source other than SEKRI, so the pending solicitation limited to 50 percent of the DLA's needs is unlawful.  AbilityOne is therefore enjoined to update SEKRI's status on the procurement list to reflect that it is a mandatory source of supply for 100 percent of the ATAP requirement, and the DLA's solicitation SPE1C1-23-R-0051 is enjoined.

The Court will issue an Order consistent with this Memorandum Opinion.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

25